JACOB NORTH & COMPANY ET AL. V. EVA ANGELO.*

FILED DECEMBER 20, 1905. No. 13,855.

Appeal: ISSUES. A case appealed to the district court must be tried in that court upon the issues presented in the lower court.

ERROR to the district court for Lancaster county: AL-BERT J. CORNISH, JUDGE. Reversed.

* Rehearing allowed. See opinion, p. 381, post.

*Wilson & Brown,* for plaintiffs in error.

*T. J. Doyle, contra.*

JACKSON, C.

On March 6, 1903, the defendant in error, hereafter styled the plaintiff, instituted an action before a justice of the peace in Lancaster county against the plaintiffs in error, hereafter styled the defendants. The bill of particulars upon which the cause was tried in justice's court, omitting the caption, is as follows:

"Plaintiff, complaining of the defendants, avers that said defendants entered into a contract in writing with plaintiff on or about the year of 1897, which said contract was made by Jacob North, Sr., who was then the president and manager of Jacob North & Company of Lincoln, Nebraska, and who also represented the defendant, Clarence S. Paine, by the terms of which said contract the defendants agreed to pay to the plaintiff, as a commission for taking orders for the history of Nebraska, $7.50 for each order procured, and further agreed to pay to the plaintiff 10 per cent. commission on the collection of money due for histories sold, and also agreed to pay to the plaintiff $40 a month for services rendered in gathering data for said history; and, in pursuance of said contract, did sell and procure 15 orders for said histories, and there is due to the plaintiff from the defendants therefor the sum of $150, no part of which has been paid; that the names of the parties of whom said orders were procured are as follows: Mr. L. W. Colby, Judge Hazlett, Mr. Hoyte, Dr. Sprague, Mrs. Minnick, Mr. A. J. Sawyer, Prof. Caldwell, state library of Nebraska, school library and Allen Fisher. The names of the other parties to whom sales were made, this plaintiff has not a list but turned the same in, and the same are upon the records of the defendants, who have refused to permit this plaintiff to see the same, and plaintiff cannot at this

time give a full statement of the names of all the parties, nor can the plaintiff more definitely describe the names of those herein given, for the reason that she has not the full names of the parties. The contract, which was in writing, providing the compensation of this plaintiff for said work, this plaintiff cannot set out in full at this time, for the reason that the same is not in her possession, but is in the possession of the defendant. At a time when this defendant turned in her records in pursuance of the request of the defendants pertaining to said business, said contract was delivered, through inadvertence, with the other papers, and since said time has been in possession of the defendants and defendants have refused to return the same to plaintiff. Said contract, in the employment of this plaintiff, was repeatedly referred to and ratified by the defendants, after the same was made. On the 12th day of November, 1901, the defendant, Clarence S Paine, wrote this plaintiff with reference to said contract as follows: 'If you are still after those people (referring to the collections placed in the hands of this plaintiff) and pushing matters, well and good, but, if not, I should like to have you return histories and supplies, etc., as I can use them. In any event I should like to hear from you.' This was written for the defendants, and all of them, in recognition of the contract of this plaintiff, hereinbefore referred to. Again, on the 9th day of December, 1901, the defendant, Paine, for all of the defendants wrote this plaintiff as follows: 'Please return at once the History of Nebraska, contracts and supplies which you have. It seems to me that I have waited as long as I should be required to for you to show some interest in the business which you have in hand. Don't you think so?' Parties from whom collections were made, so far as this plaintiff can give a list of same, are as follows: Mr. Abbott, Mr. Stearns, Mr. Tyrrell, Mr. Stevens, Mr. Raymond, Mr. A. J. Sawyer, Mr. McBrien, Mr. Dodson, Governor Thayer and Chancellor Andrews, and numerous others whom this plaintiff cannot name for the reason that the list and

records of the same are in the hands of the plaintiff. The dates of the collections this plaintiff cannot give with any degree of accuracy, for the reason that she has not the data which she turned in in her report to the defendants, and the defendants have full and complete records of the collections made, and the time of making the same, and the parties from whom they were made, and will not give this plaintiff access to their records or permit her to obtain said data until so ordered by the court. The months for which plaintiff was employed by the defendants, for which she claims the sum of $65, were as follows: From about September 12 to December 20, 1901. Plaintiff further says, in pursuance of said contract she collected for said defendants the sum of $300, and there is due to this plaintiff from said defendants for said services so performed the sum of $30, no part of which has been paid. Plaintiff further avers that she worked for said defendants for the period of three months by the terms of said contract, and there is due to this plaintiff from said defendants therefor the sum of $65, no part of which has been paid. Plaintiff avers that, by reason of the premises, there is due to this plaintiff from the said defendants the sum of $200, no part of which has been paid. Wherefore the plaintiff prays judgment against the defendants for the sum of $200 and costs of suit."

From a judgment favorable to the plaintiff, the defendants appealed to the district court. In the district court the plaintiff filed a petition substantially the same as the bill of particulars. The issues were joined in the district court upon this petition by proper pleadings and the case proceeded to trial. The trial of the case in the district court occupied the attention of the court for several days. During the progress of the trial, and after the taking of testimony had commenced, plaintiff asked and obtained leave of court, over the objection of the defendants, to amend her petition, the record being this: "Plaintiff requests the court for permission to amend the

petition by inserting after the words 'was made,' on the second page of the petition, the words 'adopted and accepted the terms thereof.' " Objections were made on behalf of both defendants, but the amendment was allowed, and exceptions taken, and the trial proceeded. On the third day of the trial, the plaintiff, over the objections of the defendants, obtained leave of court to file, and did file, an amended petition which, omitting the caption, is as follows:

"Plaintiff, complaining of the defendants, avers that on or about the month of May, 1898, the firm known as Jacob North & Company, a copartnership, of Lincoln, Nebraska, then composed of Jacob North, Sr., and Jacob H. North, entered into a written contract with this plaintiff, by the terms of which they agreed to pay to the plaintiff as a commission for taking orders for a work then in contemplation of publication by the said defendants, known as the History of Nebraska, agreeing with the plaintiff to pay her a commission of $7.50 for each order procured, and further agreeing to pay to the plaintiff 10 per cent. commission on all collections of money made by her upon orders given for said history; that, in pursuance of said contract, the plaintiff entered upon her duties under said contract and solicited and procured orders for the defendants; that thereafter, and about the 9th day of September, 1899, Jacob North, Sr., a member of said copartnership, died in Lancaster county, Nebraska; that after the death of said Jacob North, Sr., the business of said copartnership was still continued in the name of Jacob North & Company. That Hannah North, devisee in his will, was substituted in said partnership for the said Jacob North, Sr., and said new partnership still continued said enterprise of gathering and procuring data for said history and orders for the same; that soon after the death of said Jacob North, Sr., this plaintiff called upon said new copartnership of Jacob North & Company, and said new copartnership of Jacob North & Company, the defendants herein, with a full knowledge of the terms and conditions

of the contract executed by the old firm of Jacob North
& Company to this plaintiff, accepted and adopted the
terms of said contract, and promised and agreed to and
with this plaintiff, in consideration of this plaintiff con-
tinuing in said work with said defendants, the new co-
partnership of Jacob North & Company would pay to this
plaintiff all moneys earned by her in the performance of
said work, and for future services which she might render
would pay to her $7.50 for each order procured for said
history, or each history for which she obtained an order,
and would pay to her $7.50 for each order she had pro-
cured and 10 per cent. commission on all moneys col-
lected by her on orders given for said history, which was
accepted by the plaintiff, and by reason thereof, and rely-
ing thereon, she continued in said services in the perform-
ance of said work; that, at the time of commencing said
work, Jacob North & Company stated to this plaintiff
that said history would be completed and ready for de-
livery early in the year of 1899; that, again, shortly after
the death of said Jacob North, the defendants stated to
this plaintiff that said history would be completed and
ready for delivery in a short time, and directed the plain-
tiff to so represent to the subscribers to said history; that,
again, on the 12th day of September, 1901, the defendant,
Clarence S. Paine, who was then a joint owner with the
defendants, Jacob North & Company, in said enterprise of
publishing said history, orally promised and agreed for
and on behalf of the defendants that defendants would
pay to this plaintiff the sum of $7.50 for each order pro-
cured by her for said history, and would further pay to
this plaintiff the sum of 10 per cent. on all moneys col-
lected by her on orders given for said history, and would
pay this plaintiff the sum of $40 a month for gathering
data, photographs, plates and information pertaining to
said history; that, in pursuance of said contracts, this
plaintiff did procure for the defendants and delivered to the
defendants 19 written orders for said history, including
the orders delivered to the old firm of Jacob North & Com-

pany, and accepted and received by the defendants; that there is due to this plaintiff from the defendants for said services so performed in the procurement of said orders for said history as aforesaid the sum of $142.50; that there has been paid thereon a total sum of $52.50, leaving a remainder due this plaintiff thereon of $90, no part of which has been paid; that said payments consisted of $37.50 commissions collected direct from the parties making payments upon said orders, and $15 paid thereon by the defendant, Clarence S. Paine; that, in pursuance of said contracts, this plaintiff collected for the defendants upon said orders for said history the sum of $105; that there is due to this plaintiff from the defendants for said collections so made the sum of $10.50, no part of which has been paid; that, in pursuance of said later oral contract made with the defendants through the defendant, Clarence S. Paine, on or about the 12th day of September, 1901, this plaintiff procured for the defendants two orders for said history, and there is due to plaintiff from the defendants by reason thereof the sum of $15, no part of which has been paid. This plaintiff further avers that, under the terms of said contract, she worked for the defendants from the 12th day of September, 1901, to the 2d day of December, 1901, at the agreed price of $40 a month, making a total time of three months and eight days, and there is due to this plaintiff from the defendants by reason of said services so rendered the sum of $140, no part of which has been paid. That there is now due to the plaintiff from the defendants, by reason of the premises, a total sum of $200, no part of which has been paid. Wherefore plaintiff prays judgment against the defendants for the sum of $200 and costs of suit."

To the order allowing the amended petition to be filed, the defendants severally excepted, and afterwards moved to strike the amended petition from the files. The motion was denied and the trial again proceeded, resulting in a verdict and judgment for the plaintiff. From the judgment so obtained, the defendants prosecute error to this court.

Among other errors assigned is the order of the dis-
trict court permitting the filing of the amended petition
and the refusal of the trial court to strike the amended
petition from the files after it had been filed, it being
argued that the amended petition presented another and
different issue from the one presented and tried in jus-
tice's court.   The evidence discloses that in the year 1897
Jacob North, Sr., and Jacob H. North were partners,
doing business as Jacob North & Company.   These were
the only members of the partnership, and that that part-
nership continued until the 11th day of September, 1899,
when Jacob North, Sr., one of the partners, died.   Some
weeks afterwards Hannah North and Jacob H. North,
the surviving partner in the old firm of Jacob North &
Company, associated themselves together as partners and
succeeded to the business of the old partnership, which
they continued under the partnership name of Jacob
North & Company, one of the defendants in this action.
The evidence also discloses that a considerable portion of
the services performed by the plaintiff, and for which
she claims the right to recover in this action, were per-
formed by her during the existence of the partnership
which was extinguished by the death of Jacob North, Sr.,
and by the amended petition it is sought to charge the
present partnership (one of the defendants) with services
which the plaintiff claims to have performed for the de-
funct partnership, and the amount of the judgment ob-
tained by plaintiff in the district court necessarily includes
the plaintiff's claim for services performed during the life-
time of the former partnership, so that the question fairly
arises as to whether in justice's court the plaintiff's bill
of particulars presented a similar demand.   In our judg-
ment it did not.   The bill of particulars recites a written
contract with the defendants in the year 1897, by the terms
of which the defendants agreed to pay the plaintiff cer-
tain commissions for taking orders for a History of Ne-
braska, and for the collection of moneys, and a salary
per month for services rendered in gathering data for

the history, and upon that alleged contract the plaintiff sought to and did recover in justice's court. It would be trifling with language to say that the same cause of action was set out in the amended petition, upon which the plaintiff was permitted to recover in the district court.

The district court erred in permitting the amended petition to be filed, and we recommend that the judgment of the district court be reversed and the cause remanded for further proceedings in conformity with this opinion.

DUFFIE, C., concurs.    ALBERT, C., not sitting.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings in conformity with this opinion.

REVERSED.

SEDGWICK, J., dissents.

The following opinion on rehearing was filed December 21, 1906. *Judgment of reversal vacated and judgment of district court affirmed:*

1. **Appeal:** ISSUES. A case must be tried in the district court upon appeal upon the issues tried in the lower court. This does not mean that no issuable fact can be pleaded in a petition in the district court that was not alleged in the bill of particulars in the lower court. If the identity of the cause of action is preserved in the petition it is sufficient.

2. **Witnesses:** COMPETENCY. A party is not prohibited from testifying by section 329 of the code, unless his adversary represents a deceased person in the issue that is being tried.

SEDGWICK, C. J.

The bill of particulars in the justice's court and the amended petition in the district court are set out in full in the former opinion, *ante,* p. 373. The judgment of the district court was reversed because it was thought that the amended petition contained allegations which amounted to a change of the issues from those presented in the jus-

tice's court.  After the plaintiff had made a written con-
tract with the copartnership that was then doing busi-
ness under the name of Jacob North & Company, and was
composed of Jacob North, Sr., and Jacob H. North, one
of the members of the copartnership died, and a few
weeks later his widow, who was legatee under his will,
was substituted in his place in the copartnership, and the
business continued under the same name.  The action was
brought against Jacob North & Company, but the firm at
that time was composed of Jacob H. North, one of the
original copartners, and Hannah North, who had been sub-
stituted, as before stated, in the copartnership for the
deceased member thereof.  Nothing was said in the bill
of particulars as to the individual membership of the
firm, except that it was alleged that Jacob North, Sr.,
was, at the time the contract was made, president and
manager of the copartnership and acted for the copart-
nership in making the contract.  The amendment which
constituted the supposed change of issue consisted of the
allegation: "That after the death of said Jacob North, Sr.,
the business of said copartnership was still continued in
the name of Jacob North & Company.  That Hannah
North, devisee in his will, was substituted in said part-
nership for the said Jacob North, Sr., and said new part-
nership still continued said enterprise of gathering and
procuring data for said history and orders for the same;
that soon after the death of said Jacob· North, Sr., this
plaintiff called upon said new copartnership of Jacob
North & Company and said new copartnership of Jacob
North & Company, the defendants herein, with a full
knowledge of the terms and conditions of the contract exe-
cuted by the old firm of Jacob North & Company to this
plaintiff, accepted and adopted the terms of said contract,
and promised and agreed to and with this plaintiff, in con-
sideration of this plaintiff continuing in said work with
said defendants, the new copartnership of Jacob North &
Company would pay to this plaintiff all moneys earned by
her in the performance of said work, and for future serv-

ices which she might render would pay to her $7.50 for each order procured for said history, or each history for which she obtained an order, and would pay to her $7.50 for each order she had procured and 10 per cent. commission on all moneys collected by her on orders given for said history, which was accepted by the plaintiff, and by reason thereof, and relying thereon, she continued in said services in the performance of said work."

Did this constitute such a change of plaintiff's cause of action as to require her petition to be stricken from the files for that reason? The plaintiff sued to recover for services rendered to the copartnership of Jacob North & Company. After the death of Jacob North, Sr., the business of the copartnership continued to be conducted by the surviving partner in the same name for three or four weeks, whereupon the widow and legatee of the deceased partner became a member of the firm in place of the deceased and, without any change in the name of the firm, the same business was carried on in the same way. It would appear from the record that the new partner, by the terms of the will, succeeded to all of the rights of the deceased partner in the business. The contract that the plaintiff had entered into with the firm before this change in its membership was being carried out by the parties at the time of the death of the senior North, and was continued after Mrs. North became a member of the partnership in the room of her deceased husband. The action was brought against the copartnership in the name which it has always borne and has continued against that defendant in that name. The plaintiff did not rely upon these facts to fasten a liability upon the firm, as at present organized, for contracts entered into and services rendered before the change in the personnel of the membership of the firm. It seems to have been supposed by both parties that the present firm would not be liable for such contracts and services, unless the new member had expressly agreed that it should be so liable, or some member of the firm had made such agreement after the new member entered

the firm.   The allegations were that the contracts that had been entered into by the firm before the change in the membership were ratified and agreed to after the change in the membership.   Upon this point the allegations were specific and alleged the making of a contract in detail similar to the original contract.   It was upon this issue that the case was tried.   The cause of action in the justice's court was services rendered by the plaintiff for the firm of Jacob North & Company, and manifestly the cause of action was the same in the amended petition in the district court.   In a leading case in this court upon this subject it was said:

"If new issues can be raised in the appellate court it is not a trial of the same cause—not in fact an appeal." *O'Leary v. Iskey,* 12 Neb. 137.

This is the true reason of the rule, and, accordingly, it was said in *Citizens State Bank v. Pence,* 59 Neb. 579:

"The facts were pleaded with more particularity in the district court than in the court from which the appeal was prosecuted; nevertheless, the identity of the cause of action was fully preserved.   The plaintiffs were not required to state their cause of action in the district court in the same language as it was set forth in the county court."

To plead an issuable fact in the appellate court that was not pleaded in the lower court is not necessarily pleading a new cause of action, and a change in the issue presented in the petition is not subject to this objection, unless it is such a change as to amount to a new cause of action.   We think therefore the court did right in overruling the motion to strike the amended petition from the files.

2. Upon the trial in the district court the plaintiff was asked to testify as to the making of the original contract between herself and the defendant Jacob North & Company and testified that the contract was made with the copartnership through Jacob North, Sr., now deceased; whereupon it was objected that it was incompetent for her to testify to conversations and transactions between herself and the deceased.   It has been held that when one

member of a copartnership dies, and the surviving member continues the business in the name of the copartnership, one who had business transactions or conversations with the copartnership, through the deceased member thereof, is prohibited by section 329 of the code from testifying to such transactions or conversations in an action by him against the copartnership. *Mead v. Weaver*, 42 Neb. 149. This is upon the theory that the copartnership is the representative of the deceased member. In this case, if the parties had insisted that the partnership, as now organized, is the successor of the partnership as it existed when the plaintiff first entered into contract with it, and that the substitution of the new member in the partnership for the deceased member made the partnership, as now organized, liable for the contracts it had entered into through the deceased partner, there would be great force to the objection; that is, if the plaintiff was seeking to enforce a liability which existed against the deceased at the time of his death and which had been transferred to the new member of the partnership, a liability which the deceased would now be interested in contesting, if living, the new partnership would be considered the representative of the deceased in such a contest, and, being the adverse party, the plaintiff would not be allowed to testify to such transactions. In this case, however, the defendant insisted, and plaintiff seems to have conceded, that the liability of the defendant copartnership, as now organized, depended solely upon contracts that had been made since its present organization, and that, in order to recover, the plaintiff must prove that she had entered into a contract with the copartnership, as now organized, by which the copartnership made itself liable for her claim. This issue was tried to the jury, and the evidence in regard to a prior conversation or contract with Mr. North, the deceased, is not within the prohibition of the statute. It is not as a representative of the deceased that the copartnership now defends. It is, as the issue was presented and tried, called upon to defend against its own contracts entered

28

Jacob North & Co. v. Angelo.

into by the copartnership, as now constituted. The objection then was properly overruled.

3. It is argued somewhat at length in the brief that the evidence is not sufficient to support the verdict. A large amount of evidence was taken considering the amount involved in the litigation and the evidence is somewhat conflicting, but we cannot say that there is such a failure of testimony as to render the verdict erroneous on that account.

4. The court was asked to instruct the jury that the plaintiff could not recover against the present firm of Jacob North & Company for work that had been done for the firm of Jacob North & Company before the death of Jacob North, Sr. The refusal of this instruction is assigned as error. The issues were made, and the case was tried, as before stated, upon the theory that the copartnership, with members as at present organized, expressly agreed that the plaintiff should continue her work, and that the firm of Jacob North & Company would pay her for all services rendered to that firm, notwithstanding that the membership had been changed. It seems reasonable that the parties should so agree, under the circumstances. The instruction asked would be equivalent to telling the jury that there was no such agreement, which under the evidence in this case would be erroneous, as before stated.

The petition in error contains a large number of assignments, but such of them as are insisted upon in the briefs fall within the principles already discussed, and it is not thought necessary to pursue the matter further. We have discovered no error in the record requiring a reversal of the judgment.

The judgment heretofore entered is vacated, and the judgment of the district court is

AFFIRMED.