## GUARDIAN TRUST CO. v. MEYER.

Circuit Court of Appeals, Eighth Circuit.
May 2, 1927.

No. 7442.

1. Contracts ⊜95(5)—"Duress" may consist of threats of criminal prosecution of near relative, and is ground for avoiding contract.

"Duress" may be caused by threats of criminal prosecution of husband, wife, or child or other near relative of person whose action thereby is controlled, though no crime has in fact been committed or prosecution begun, and, if contracting party has been so put in fear as to deprive him of the free will essential to contractual capacity, transaction may be avoided.

[Ed. Note.—For other definitions, see Words and Phrases First and Second Series, Duress.]

2. Contracts ⊜100—Whether transaction is result of duress is question of fact.

Whether a particular transaction is the result of duress is a question of fact.

3. Bills and notes ⊜520—Evidence held to sustain finding that notes were obtained by duress.

Evidence held to sustain finding that defendant signed note sued on because of threats, amounting to duress, that, if he did not so sign his son would be prosecuted for forgery.

4. Witnesses ⊜148—State statute, prohibiting testimony by interested witness as to conversations with deceased person, held not applicable where adverse party not decedent's representative (Rev. St. Neb. 1913, § 7894).

Rev. St. Neb. 1913, § 7894, providing that no person having a direct legal interest in result of civil action shall be permitted to testify to any transaction or conversation with deceased person when adverse party is represent-

ative of deceased, with certain exceptions, held not applicable where adverse party is not deceased's representative.

5. Witnesses ⊜154—Maker's testimony respecting conversations with holder's deceased agent to show notes sued on were procured by duress held competent (Rev. St. Neb. 1913, § 7894).

In trust company's action on notes purchased by it, defendant's testimony as to conversations with deceased agent or representative of trust company, offered to show that notes were procured by duress, held competent; plaintiff not being deceased's representative within Rev. St. Neb. 1913, § 7894.

6. Witnesses ⊜393(2)—Stenographer's notes, taken at former trial, even if not competent evidence of facts, were admissible to impeach testimony of plaintiff's witness.

Even if stenographer's notes, taken on a former trial, were not competent as affirmative evidence of facts to which they referred, they were properly received to impeach testimony of plaintiff's witness, where stenographer testified to accuracy of notes and to his independent recollection of questions and answers.

7. Bills and notes ⊜537(6)—Evidence held sufficient to go to jury on issue of trust company's good faith and knowledge of duress affecting notes purchased by it.

In trust company's action on notes purchased by it, evidence held sufficient to go to jury on issue of its knowledge of duress affecting notes and its good faith in purchasing them.

8. Evidence ⊜211—Statements of president and managing officer of trust company, in testifying in former action on notes sued on, held competent and binding on company.

Statements made by president and managing officer of trust company in testifying in company's former action on notes sued on, held competent and binding on company.

9. Pleading ⊜236(1)—Granting of leave to amend answer rests in trial court's sound discretion.

Granting of leave to amend an answer rests in the sound discretion of the trial court.

10. Pleading ⊜236(2)—Permitting defendant to amend answer on eve of trial of action on notes held not abuse of discretion.

Permitting defendant to amend answer on eve of trial of action on notes held not abuse of discretion, where amended answer consisted largely of expansion of defenses interposed by original answer, and plaintiff neither urged surprise nor asked for continuance.

11. Trial ⊜267(1)—Trial judge need not charge in exact language requested, nor adopt abstract statements of law in opinions of appellate courts.

The trial judge is not required to charge in exact language requested, nor to adopt abstract statements of law as formulated in the opinions of the appellate courts, provided the substance of the law applicable is sufficiently embodied in the charge given.

**12. Bills and notes ⬅➡104—Trust company, purchasing notes with knowledge of duress, could not avoid defense by proof of maker's statements that notes would be paid.**

If trust company purchased notes with knowledge that they were obtained by duress, it could not overcome defense of duress by proving that maker made statements that notes would be paid at maturity.

**13. Contracts ⬅➡95(1)—Contract procured by duress may be avoided.**

A contract procured by duress wants the essential element of consent, and may be avoided.

**14. Contracts ⬅➡97(1)—Defendant is not estopped to set up defense of duress, in absence of delay, silence, or acquiescence creating presumption of ratification.**

Defendant is not estopped to set up defense that contract was obtained by duress, in absence of such long delay, silence, or acquiescence as to create presumption of ratification, acceptance, or change of position by other party.

**15. Estoppel ⬅➡119—Evidence held insufficient to go to jury on issue of estoppel to set up defense of duress in action on notes.**

In trust company's action on notes purchased by. it, in which defendant set up defense of duress, evidence *held* not to require submission to jury of issue of estoppel to set up such defense.

In Error to the District Court of the United States for the District of Nebraska; Thomas C. Munger, Judge.

Action by the Guardian Trust Company against H. H. Meyer, first and real name unknown. Judgment for defendant, and plaintiff brings error. Affirmed.

See, also, 296 F. 789.

Elmer J. Burkett, of Lincoln, Neb., (Burkett, Wilson, Brown & Wilson, of Lincoln, Neb., and Hindry, Friedman & Brewster, of Denver, Colo., on the brief), for plaintiff in error.

C. A. Sorensen, of Lincoln, Neb., for defendant in error.

Before STONE and VAN VALKENBURGH, Circuit Judges, and SYMES, District Judge.

VAN VALKENBURGH, *Circuit Judge.* Plaintiff in error is a banking corporation organized under the laws of Colorado, with its principal place of business at Denver. The defendant in error is a citizen of the state of Nebraska, living at Roca, Lancaster county, in that state. During all the times mentioned in the record before us, and for a long time prior thereto, one Denver R. Platt was the president and managing officer of plaintiff in error. In October or November,

1921, one William C. Merrill, having invented a so-called headlight controller for use on automobiles, was planning the organization of a company to handle and distribute his invention. Herman H. Meyer, Jr., the son of defendant in error, became interested in this enterprise, and Merrill offered him a half interest in the company to be organized for a consideration of $10,000. Meyer, Jr., discharged this consideration with six promissory notes purporting to be signed by himself and his father, defendant in error. Both Merrill and one N. L. Angus were patrons of plaintiff in error—the former having been introduced by Angus when he opened his account. Prior to this transaction, Merrill, with Angus as indorser, had borrowed some money of plaintiff in error. Upon receiving the notes from Meyer, Jr., Merrill, accompanied by Angus, took them to plaintiff in error for discount or sale. Platt, president of plaintiff in error, conducted for his company all transactions relating to these notes, and notes subsequently issued in their stead. He told Merrill that before discounting the notes he must first investigate the financial responsibility of Meyer, Sr. Letters and telegrams which he sent assured him that defendant in error was a man of financial responsibility. He bought the first of these notes, for the principal sum of $1,600, as he says, upon the financial standing of Angus, together with his acquired knowledge that Meyer, Sr., was a man of means; this transaction occurred on November 7, 1921. The next day Platt wrote Meyer, Sr., as follows:

"Mr. H. H. Meyer, Sr., Roca, Nebraska—Dear Sir: We have been offered the notes which you signed with your son H. H. Meyer, Jr., to purchase an interest in the Headlight Controller Company organized by Mr. W. C. Merrill, Jr., but, before purchasing them, thought it best to write you and obtain an expression as to whether, in case your son is unable to meet them at maturity, you are planning to do so yourself.

"An early reply will greatly oblige,
"Yours very truly, President.

November 10th, defendant in error made the following reply:

"The Guardian Trust Co. Denver, Colorado—Dear Sir: Yours of the 8 just at hand and will say that I glad that you wrote me before perching such Notes you may see the name of H. H. Meyer on them notes but I am sure that I did not write them but just the same wish you would write me the amount

of them Notes and the Dates of them and hough this company is that these notes were given to and what do they do I never herd of such company as you mencin in your letter.

"Yours truly,    H. H. Meyer.

"Roca Nebr."

Thereupon Platt called in Angus for an explanation; the result was that Angus was dispatched to Roca, Nebraska, to interview Meyer, Sr., and ascertain what could be done. Meantime, plaintiff in error had purchased but the one note for $1,600, which Angus took with him to Nebraska. In addition to this, Platt gave Angus a letter of introduction to Meyer, Sr., which letter is in the following. language:

"The Guardian Trust Company, Denver, Colorado.

"November 16, 1921.

"Mr. H. H. Meyer, Sr., Roca, Nebraska— Dear Sir: We are in receipt of your letter of the 10th inst., regarding the notes we inquired about in ours of the 8th inst.

"Before receiving your letter, we had advanced the money on the first note of $1,600 to Mr. W. C. Merrill, Jr., who is president of the Universal Headlight Controller Company.

"One of our depositors, Mr. N. L. Angus, who will present this letter, is going to your neighborhood on business for himself, and we have asked him to see you and have explained the entire situation to him, and he will be able to tell you how we feel regarding the matter better than we can write it.

"Will you please confer with him and I hope an understanding may be reached.

"Yours very truly,

"D. R. Platt, President.

Upon his arrival, Angus interviewed defendant in error and urged upon him the execution of new notes in place of the originals. Meyer was advised that his son, in thus signing his father's name without authority, had committed forgery and would be prosecuted therefor unless the matter was satisfactorily adjusted. In the course of these negotiations, Angus left at the Meyer home his original letter of introduction from Platt, on the back of which he had written the following:

"Dear Mr. Meyer: I felt that it was my duty to see again before notifying the Bank these indorsements were forgeries as it can be fixed and save Herman at no expense to you. After seeing you yesterday I wired the bank I had seen you but made no settlement. You can see there reply they don't know as yet whether the signature is yours or not and can't do anything to Herman until I notify them for sure. Mr. Meyer I don't want to see Herman go to the Penitentiary or do you and would suggest you come to town this afternoon and see me. Will wait at Lincoln Hotel until you come in.

"N. L. Angus."

The reply of the bank referred to is the following telegram:

"Denver, Colo., Nov. 19, 1921.

"N. L. Angus, Lincoln, Nebr. Why don't you wire us if Meyer signature is genuine we will delay criminal action no longer wire us quickly.

"Guardian Trust Company."

Thereupon the Meyer family held a conference, and it was decided to save Meyer, Jr., from prosecution and that new notes, substantially duplicating those originally made, should be executed by defendant in error.

When Angus returned to Denver with the new notes, he took them to the bank, and he and Merrill again asked Platt to purchase the entire issue. The first of these new notes was dated October 31st; the others November 22d, on or about the date of their execution. November 26, 1921, Platt wired defendant in error as follows:

"H. H. Meyer, Sr., Roca, Nebraska. Angus has delivered your notes ten thousand dollars please wire whether everything is regular and you intend to pay them at maturity provided your son does not do so.

"The Guardian Trust Company."

To which he received this reply:

"Roca, Nebr. Nov. 27-1921.

"Gurdine Trust Co. Denver, Colo. Received your telegram today and as I can not send a telegram here on Sunday thought I would write.

"I sind them notes but with the understanding that them notes cold be renued as I have not the ready cash now.

"Yours truley    H. H. Meyer

"Roca, Nebr."

Later on, as the first of these notes fell due, demand was made for payment and requests for extension, which were granted. In the course of this correspondence, defendant in error evaded the issue of payment by letters, directly or indirectly, acknowledging the indebtedness, but pleading illness and present lack of funds as an excuse for delay. Plaintiff in error offered a discount of $500 as a consideration for immediate pay-

ment of all the notes. Finally, on May 31, 1922, defendant in error, through his attorneys, advised the trust company that payment would be refused; shortly thereafter this suit was brought in the District Court of Nebraska, and prosecution was instituted against the son of defendant in error in the proper jurisdiction.

For defense defendant in error alleges that his signature to these notes was procured by duress in that:

"By reason of said letter to the defendant from the plaintiff delivered by said N. L. Angus, said letter of said N. L. Angus, said telegram of the plaintiff to said N. L. Angus, the defendant and his family were put in great fear, and the will of the defendant was overcome, and by reason thereof, and because he believed that, if he did not execute six new notes to take the place of said original six notes, his son, H. H. Meyer, Jr., would be arrested and prosecuted by the plaintiff and sent to the penitentiary, this defendant signed said six new notes for no other purpose save and except to keep the plaintiff from prosecuting his son, H. H. Meyer, Jr., for forgery and sending him to the Penitentiary of Colorado."

The answer further alleged that defendant would not have signed said six new notes for any other reason and received no consideration whatsoever therefor. Continuance of this mental condition is thus stated in the amended answer:

"That from the time this defendant signed said six new notes, on or about November 22, 1921, until he talked with C. A. Sorensen, a lawyer of Lincoln, Neb., on or about May 1, 1922, the defendant remained in great fear and his will continued to be overcome by reason of the letters, telegrams, and statements of the plaintiff and said N. L. Angus, as aforesaid, and continued to believe during all of said time that, if he did not pay said six new notes, the plaintiff would bring about the prosecution of his son, H. H. Meyer, Jr., for forgery and send him to the penitentiary, and that all the letters and telegrams sent to the plaintiff by this defendant in which the defendant agreed to pay said notes or make provision for their payment were written by defendant while under the influence of said fear and while his will was overcome by said threat of criminal prosecution, and were written by the defendant for the purpose of suppressing said threatened criminal prosecution of his son, H. H. Meyer, Jr., by the plaintiff, and for no other purpose, and were without any other consideration."

Upon trial, the jury returned a verdict for defendant upon all the notes in suit.

This case comes to this court for the second time. At the first trial the court directed a verdict for the trust company; the judgment entered thereon was reversed and remanded by this court (296 F. 789, 35 A. L. R. 856) upon the ground that the issues of duress at the time the notes were given, and continuing down to and including the time the letters were written, and whether the notes were given, and the letters written as a result thereof, were questions of fact for the jury.

[1] What constitutes duress as a defense is thus stated by this court in International Harvester Co. v. Voboril, 187 F. 973:

"Duress may be caused by threats of a criminal prosecution of a husband, wife, child, or other near relative of the person whose action is thereby controlled, though no crime has in fact been committed or prosecution begun. If the contracting party has been so put in fear as to be deprived of the free will power essential to contractual capacity, the transaction thereby induced may be avoided."

[2, 3] Whether such duress exists as to a particular transaction is a matter of fact. Meyer v. Guardian Trust Co. (this court) 296 F. 789, 792, 35 A. L. R. 856. The evidence at the trial below was amply sufficient to support the verdict and judgment as to the operation of the duress to deprive defendant in error of the free will power essential to contractual capacity, and the judgment must be affirmed, unless, as insisted by plaintiff in error, errors were committed in the course of the trial which compel reversal. The facts concerning the threats of prosecution of the son of defendant in error which constituted the alleged duress were established largely by the testimony of Meyer and others as to the acts and statements of Angus, who was deceased at the time of the trial. This testimony is challenged upon two principal grounds: First, because under the law of Nebraska defendant in error was not permitted to testify to any transaction or conversation had between Angus and himself; and, second, because there was no competent evidence that plaintiff in error knew of or participated in the duress, but, on the contrary, it took the notes in good faith without notice of any infirmity in the instruments or defect in the title of the person negotiating them. The first of these contentions is based upon section 7894 of chapter 12 of the Revised Statutes of Nebraska of 1913, to wit:

*"Against Representative of Deceased Person—When Incompetent.*—No person having a direct legal interest in the result of any civil action or proceeding, when the adverse party is the representative of a deceased person, shall be permitted to testify to any transaction or conversation had between the deceased person and the witness, unless the evidence of the deceased person shall have been taken and read in evidence by the adverse party in regard to such transaction or conversation or unless such representative shall have introduced a witness who shall have testified in regard to such transaction or conversation, in which case the person having such direct legal interest may be examined in regard to the facts testified to by such deceased person or such witness, but shall not be permitted to further testify in regard to such transaction or conversation."

[4] As indicated by the opening language, this statute applies only when the adverse party is the representative of a deceased person. Such is the uniform holding of the Nebraska courts of last resort. North & Co. v. Angelo, 75 Neb. 373, 381, 105 N. W. 1089, 110 N. W. 570; German Insurance Co. v. Frederick, 57 Neb. 538, 77 N. W. 1106; Brown v. Forbes et al., 1 Neb. (Unof.) 888, 96 N. W. 52; Walker v. Hale, 92 Neb. 829, 833, 139 N. W. 658.

[5] It is evident from the discussions, as well as from the language of the statute itself, that it was intended primarily to apply to the legal representatives of the deceased person. But, however this may be, plaintiff in error is in no sense the representative of Angus, and the statute in question has therefore no application to the situation before us. No other Nebraska statute and no federal rule exists by which the testimony of Meyer and other witnesses upon this phase of the case is rendered incompetent. Second, the trust company's knowledge of, and responsibility for, the statements and acts of Angus in procuring the execution of the new notes by defendant in error is based upon a number of circumstances disclosed by the evidence submitted. The letter of introduction which the trust company gave to Angus for delivery to Meyer is in itself significant.

"One of our depositors, Mr. N. L. Angus, who will present this letter, is going to your neighborhood on business for himself, and we have asked him to see you and have explained the entire situation to him, and he will be able to tell you how we feel regarding the matter better than we can write it."

It was obviously this feeling that plaintiff in error desired to get home to Meyer—a feeling not best to be committed to writing. While Angus was engaged in impressing upon Meyer the necessity of executing all these notes to save his son from prosecution, he presented to him the telegram purporting to be from plaintiff in error in support of the threat intended to be conveyed. We repeat the language of that telegram:

"Why don't you wire us if Meyer signature is genuine we will delay criminal action no longer wire us quickly.

"Guardian Trust Company."

Immediately upon the return of Angus, negotiations were renewed between Merrill, Angus, and Platt for the purchase of the remaining five notes. What had already occurred respecting these notes should at least have inspired suspicion in the mind of the president of plaintiff in error as to the regularity of the entire transaction. His readiness to purchase the notes may perhaps be explained by the large discount of 15 per cent. exacted by the trust company. Plaintiff in error seeks to fortify its claim of good faith and the exercise of care by the telegram it sent immediately before the purchase of the notes, to wit:

"Angus has delivered your notes ten thousand dollars please wire whether everything is regular and you intend to pay them at maturity provided your son does not do so."

To our minds, under the circumstances, the sending of this telegram makes against, rather than for, the good faith of the sender in this transaction. In Watson v. Hoag, 40 Iowa, 142, defendant informed plaintiff before the transfer of the notes in suit that no defense to them existed and that they would be paid. The court said:

"We think the statement of defendant, that the notes were without defense, was drawn from him as a device to cover up the unlawful nature of the contract, and that plaintiff knew the real facts at the time, and was a party to the contrivance by which the declarations were elicited. We think they were a part of the fraudulent acts of the transaction, and the court's conclusion that plaintiff did not, in good faith, rely upon them, is correct. He is not, therefore, a transferee, in good faith, of the paper, and cannot be protected against the defense of usury."

In Hill v. Thixton, 94 Ky. 96, 104, 23 S. W. 947, 949, where a party simultaneous-

ly with the execution of a note obtained by fraud, obtained from the maker a statement that there was no defense to the note and that it would be paid, the court said:

"Upon presentation of the note alone of the appellant, importing as it did a valid consideration, and containing an express promise to pay in the usual form, a purchase would have been more in accordance with the usual course of trade than when the holder shows evidence of the necessity of fortifying his property by a suspicious overshow of virtue. It was a statement on which they had but slim right to rely. It was indeed calculated to arouse and excite suspicion. An ordinary and unsuspicious-looking promissory note was in bad company when it had to be backed up by such an unusual paper."

To the same effect are, Holzbog v. Bakrow, 156 Ky. 161, 160 S. W. 792, 50 L. R. A. (N. S.) 1023; Stuart v. Harmon (Ky.) 72 S. W. 365; 21 Corpus Juris, p. 1138, par. 137.

The foregoing authorities are quoted or cited with approval by this court in Meyer v. Guardian Trust Co., 296 F. loc. cit. 799.

It appears from the stenographer's notes at the former trial that Platt, the trust company's president, testified that the telegram to Angus forecasting criminal prosecution was sent by the Guardian Trust Company; that to the question, "What criminal action did you mean?" he replied, "Against the son." Upon cross-examination at the last trial, he at first stated that he could not remember his answers at the former trial. Finally, however, the statements and answers above set out were denied, and, upon redirect examination, further explanatory statements were made by him. However, Merrill, in a deposition introduced on behalf of defendant in error, stated that at the outset Platt told him that he and young Meyer were in a conspiracy to defraud the bank, and also told him what the penalty would be for forgery.

[6] In their assignments of error, counsel for plaintiff in error attack the reception of the stenographer's notes in evidence upon the ground that their accuracy is not established. The rule with respect to such notes is thus stated in Lueders v. United States (C. C. A. 9) 210 F. 419, 425:

"Where a court reporter, who had taken the defendant's testimony in a prior proceeding on being shown the transcript of his notes, identified the same and testified that he made it and that it was a correct transcript of his notes, it was admissible to show

defendant's testimony on such occasion, though the witness further testified that he had no memory or independent recollection of the testimony, and that a reference to the transcript would not refresh his recollection."

In this case Stough testified, not only to the accuracy of the notes, but to his independent recollection of the questions and answers. The foundation for the introduction thereof was laid in the cross-examination of Platt; his attention being specifically called thereto. Subsequently, these questions and answers were read to the jury from the transcript. The correctness of the record is further established by the fact that the bill of exceptions, upon the first writ of error to this court, was founded upon this transcript of Stough, who was the court reporter at the first trial. It is true that, at that time the correctness of some portions of the transcript was challenged, but, as stated by counsel for plaintiff in error, the record presented to this court upon the former review was agreed to by counsel as a whole. Certain it is that in the opinion of Judge Kenyon, 296 F. 789, supra, these various matters respecting the sending of the telegram to Angus and the prosecution contemplated against the son of defendant in error appear as accepted facts.

[7] It is further urged that, in any event, these statements at the former trial could not be received as affirmative evidence of the facts to which they refer. Even if this were true, the fact remains that these specific questions and answers were properly received by way of impeachment of the witness Platt; therefore error cannot be imputed to their presence in the record, and without them there was enough to justify submission to the jury upon the questions of the knowledge and good faith of plaintiff in error in the purchase of the notes.

[8] However, it is a further insistence that Platt, as an officer and agent of plaintiff in error, could not bind his corporation by admissions and statements made at this trial, so long after the transaction, and not as a part of the res gestæ. But it must be remembered that Platt was the president and managing officer of the trust company; that he was acting for his corporation in the prosecution of this suit and in the establishment of the facts necessary to maintain its cause of action. In the course of his testimony at the last trial he was asked: "There were no negotiations about the purchase of these notes on behalf of the Guardian Trust Company made by anybody else besides your-

self? A. No." Later on he said: "There is only one managing officer (of the trust company). Q. Who is that? A. I am." Mr. Platt was not called upon to make any admissions nor give any opinion as to the liability of his company, or otherwise, with respect to any matter concerning which the rule invoked has application. His testimony dealt only with what was said and done in a transaction in which he was the president, manager, and sole acting representative of plaintiff in error, and, as such, it was competent and binding upon his company.

[9-11] Exception is taken to the action of the court in permitting defendant in error to amend its answer upon the eve of trial. The granting of such amendments rests in the sound discretion of the court, and it does not appear from this record that that discretion was abused. The amended answer consisted largely of an expansion of the defenses interposed in the original. In our judgment, all such defenses could have been proved and, were to be anticipated without amendment. The court, upon motion, struck out such parts of the amendment as were deemed improper. Plaintiff in error neither urged surprise nor applied for continuance. Error is next assigned to the refusal of the following requested instruction:

"It is a sound principle of law and common honesty that, where a maker of a note represents to an intending purchaser that the same is valid and that he will pay it and by so doing induces its purchase by said person, in an action against him to enforce the note, he will be estopped from setting up his defense thereto or questioning its validity."

This instruction is a quotation from the opinion of this court on the former trial, and its refusal is assigned as error largely on that ground. It is a well-known rule that a trial judge is not required to charge in the exact language requested, nor to adopt abstract statements of law as formulated in the opinions of appellate courts, provided the substance of the law applicable is sufficiently embodied in the charge. The language of this request, as given in the trial below, without modification adapting it to the facts and circumstances presented by the record, would have given undue emphasis to the theory of the plaintiff. The court, in the charge given, correctly advised the jury of the rights of the respective parties. Finally, counsel for plaintiff in error except to the charge in the following language:

"Comes now the plaintiff and excepts to the instruction of the court as given to the jury on the question of estoppel limiting the question of estoppel only to the effect that if duress was exercised against the defendant and the plaintiff knew it at the time it purchased the notes that the defendant would not be estopped from claiming duress as a defense, even though he subsequently sent letters and telegrams ratifying and confirming the validity of said notes."

[12] That part of the charge to which this exception is directed is in the following language:

"There is much evidence as to the circumstances of the taking of these notes by the plaintiff. Among other things, there is evidence here of letters and telegrams claimed to have been sent between plaintiff and defendant before the bank bought and paid for these five notes. In one of these the defendant said, in substance, as I remember it, that the notes will be paid. In others he spoke of renewing them, and asked for an extension of time. Now the bank claims that on account of these statements in these letters that it bought the notes believing there was no defense to them. These statements that the defendant made in these letters were such that you would have to disregard the defendant's claim of duress even if it existed as he claims, if you find that the bank had no notice of it and bought the five notes relying on the statements of the defendant in his two letters before they bought. But, if the bank had notice of the notes being obtained under duress, as I have before stated, at the time it bought them, then the bank is not entitled to claim that the defendant cannot make a claim of duress, and, if the fact is shown that duress existed, as I have defined it, and the bank had notice that they were obtained by duress, as I have stated it, then the claim of duress would be a sufficient defense as against these notes."

[13] This charge of the court conforms to the rule laid down by the Supreme Court that a contract produced by duress wants the essential element of consent and may be avoided. Brown v. Pierce, 7 Wall. 205, 216, 19 L. Ed. 134; Baker v. Morton, 12 Wall. 150, 157, 20 L. Ed. 262; French v. Shoemaker, 14 Wall. 314, 332, 20 L. Ed. 852; United States, Lyon et al. v. Huckabee, 16 Wall. 414, 431, 432, 21 L. Ed. 457; Eadie v. Slimmon, 26 N. Y. 9, 82 Am. Dec. 395; Central Bank v. Copeland, 18 Md. 305, 81 Am. Dec. 597; City Nat. Bank v. Kusworm, 88 Wis. 188, 59 N. W. 564, 26 L. R. A. 48, 43 Am. St. Rep. 880. This is the general

rule in federal and state jurisdictions. Rose's Notes, vol. 7, p. 1118.

It is true that duress does not make such a contract absolutely void under all circumstances. The exception is thus stated by this court in Connolly v. Bouck et al. (C. C. A. 8) 174 F. 312:

"A contract made under duress is not void, but voidable only, and cannot be avoided by a party who, after its execution, has ratified it by accepting its benefits."

In that case the party who claimed to have executed an agreement under duress accepted "the advances of money thereafter made for the development of the mine, and alleges, in his answer, that he had been at all times since, and even now, willing and anxious to pursue his course and discharge his part of the contract." Analogous thereto is the rule announced, again by this court, in Burnes v. Burnes (C. C. A. 8) 137 F. 781, 783:

"Delay, silence, acquiescence, or a retention of the fruits of the agreement for a considerable length of time after a discovery of the fraud is an exercise of the option to affirm, and irrevocably ratifies the agreement."

[14, 15] It will thus be seen that the conduct of a party who may not avail himself of this defense must consist in such a long delay, silence, or acquiescence that ratification and acceptance must be presumed, or in that he must have received benefits as a result of the contract, and therefore be estopped to reject the burdens. In other words, there must have been some change of position brought about by operation of time, or by the acceptance of advantages, the retention of which would operate to the disadvantage of the other party. Some element of this nature must intervene before a contract which lacks on one part free will and consent can be enforced. The case at bar does not, in our judgment, fall within the exception. The same fear of prosecution that compelled the execution of the notes continued as a matter of course; the defendant in error so testifies, and reason supports his testimony. All his subsequent statements are readily attributable to this mental state. The positions of the parties were not changed. No new benefit nor advantage accrued to the maker nor any new loss or disadvantage to the holder of these notes. The mere subsequent announcement that he would pay the notes added nothing to the obligation imposed by their execution and delivery; when collection threatened, Meyer interposed this defense. There had been no

19 F.(2d)—13

long period of delay, silence, nor acquiescence. In our opinion, therefore, the record did not demand submission of the issue of estoppel. We have carefully considered all the assignments of substance and upon which counsel for plaintiff in error rely.

Finding no reversible error, the judgment is affirmed.