## HOLZMAN v. BARRETT.

No. 10381.

United States Court of Appeals
Seventh Circuit.

Oct. 22, 1951.

Rehearing Denied Nov. 30, 1951.

---

3. Linville v. Milberger, 10 Cir., 34 F.2d 386. 388.

4. Altoona Theatres v. Tri-Ergon Corp., 294 U.S. 477, 486, 55 S.Ct. 455, 79 L.Ed. 1005.

Robert B. Johnstone, Maurice R. Kraines, Chicago, Ill., for appellant.

John W. Costello, Edward Wolfe, Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and FINNEGAN and LINDLEY, Circuit Judges.

MAJOR, Chief Judge.

The complaint by which this action was instituted sought recovery of damages resulting from an alleged conspiracy entered into by the defendants, by which, through the employment of duress, plaintiff was deprived of his property. The complaint was verified and alleged in considerable detail the nature of the conspiracy, numerous overt acts performed in its execution, a description of the property and its value acquired by the defendants, together with the acts upon which the asserted duress was predicated. Defendants, without answering the complaint, filed a motion for summary judgment, supported by the affidavit of the defendant Robert Barrett and that of the defendant Kramer, which were predicated upon the theory that the plaintiff by reason of subsequent contracts made between him and the defendants (or some of them) had ratified the manner and means by which the defendants acquired his property as alleged in the complaint, or, at any rate, that he had released the defendants or had waived any claim for damages alleged in the complaint. In response to this motion by the defendants for a summary judgment, plaintiff filed what is referred to as a motion to dismiss defendants' motion for summary judgment, supported by his affidavit.

In a memorandum directed to counsel for the respective parties, the district court stated "that no material issues of fact are raised by the pleadings, the affidavits and exhibits filed in support thereof," and, so far as the record discloses, it was upon this basis that the court allowed defendants' motion for summary judgment. The parties before this court have argued in the main questions of law, that is, whether the plaintiff, by the agreements entered into subsequent to the time the defendants acquired his property, had waived or released any right to recover damages on the cause stated in his complaint. These are questions of law because they involve the interpretation and construction, as well as the effect to be given written instruments. Notwithstanding, there lurks in this record, as in all records where summary judgment is allowed, the question as to whether there existed a "genuine issue as to any material fact", Fed.Rules Civ. Proc. rule 56(c) 28 U.S.C.A., and this court during oral argument requested that the parties file supplemental briefs on this point, which has been done.

Obviously, if such an issue existed, summary judgment was erroneously entered and must be reversed. In such case, we shall not reach the legal questions in controversy relative to release or ratification; or, conversely, we shall only reach such legal issues if we sustain the district court in its view that there existed no "genuine issue as to any material fact".

The issue of fact is whether the conspiracy and duress alleged in the complaint, by

which defendants obtained plaintiff's property, remained in effect at the time of the subsequent execution of certain written instruments by which defendants contend plaintiff ratified, affirmed or released the cause of action stated in the complaint.

Rule 56(c) provides for the rendition of summary judgment "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The defendants, in arguing the question under discussion, completely ignore the serious charges contained in the complaint as to the manner and means which they employed in obtaining plaintiff's property and rely entirely upon the instruments subsequently executed and the circumstances connected therewith. In other words, the effect of their position is that there was no issue relative to conspiracy or duress at the time of the execution of these latter instruments and that the undisputed allegations of the complaint are of no consequence. This, in our view, is a misconception of the rule which requires an examination of all the pleadings, etc., in determining whether a motion for summary judgment shall be allowed.

While the facts alleged in the complaint must presently be accepted as true, we think it relevant to note briefly some of its salient allegations. It alleged that plaintiff since October 1, 1939 was chairman of the board of directors of the Prudence Life Insurance Company, an assessment legal reserve life insurance company organized under the laws of the State of Illinois, and was the owner of all its outstanding certificates, aggregating $12,000. He also owned all the capital stock of the 407 Agency Corporation, an Illinois corporation, which had a contract with the Prudence Life Insurance Company, under which it received a premium of 5% on policies in force in said Life Insurance Company. Plaintiff also at all relevant times controlled the vast majority of the proxies executed by holders of outstanding policies in the Insurance Company, and

thus was in a position to nominate, elect and control the officers and directors of said company.

The complaint alleged that at all relevant times the fair and reasonable cash value of his holding, consisting of the stock of the 407 Agency Corporation and the guaranteed fund certificates of the said Prudence Life Insurance Company, was in excess of $200,000, based on sales of similar holdings in similar companies during the same period. The complaint sets forth facts concerning a controversy between certain individuals and the plaintiff relative to the Prudence Life Insurance Company, which culminated in a proceeding in the Circuit Court of Cook County, and that the defendant George F. Barrett, then and at all relevant times the Attorney General of Illinois, and his brother, the defendant Robert Barrett, also an attorney, became cognizant of such proceeding; that the Attorney General was entitled in his official capacity to institute proceedings for the rehabilitation of insurance companies and that George F. Barrett, Robert Barrett and defendant Sidney Kramer entered into a conspiracy to acquire plaintiff's property. Numerous acts are set forth which defendants are alleged to have committed in the execution of said conspiracy, which we shall only briefly notice.

It was alleged that a proceeding was instituted in the Superior Court of Cook County for the appointment of a rehabilitator of Prudence Life Insurance Company, and that plaintiff was told by George F. Barrett that he must do as directed by Robert Barrett if he wished to avoid further trouble with the state; that he was notified by the latter that the defendants would take over the Life Insurance Company by means of the State Court action unless the plaintiff turned over to Robert Barrett or his nominee a one-half interest in the 407 Agency Corporation; and that plaintiff was compelled on August 18, 1944 to execute a contract by which one-half of the stock of the Agency Corporation and the voting proxies in the Life Insurance Company were transferred to defendant Kramer. A copy of this contract was attached to the complaint, and while it shows that the plaintiff re-

ceived as consideration for the transfer of such property the sum of $2,500, the complaint alleged that this was received in the form of a check from defendant Sidney Kramer, the proceeds of which plaintiff was required to deliver to Robert Barrett.

The complaint alleged that pursuant to a telephone conversation with George F. Barrett, plaintiff was required to pay from the funds of the Agency Corporation $600 monthly to one Ben Kramer, the father of the defendant Sidney Kramer, who at that time was "a hanger-on or attache" of the office of the Illinois Attorney General; that on February 2, 1946, plaintiff and his wife, Clara Holzman, were required to deliver to Robert Barrett plaintiff's remaining stock in the Agency Corporation, all proxies controlled by plaintiff for voting in the names of policy holders of the Life Insurance Company, all lists of policy holders in plaintiff's possession and all guaranteed fund certificates of the Life Insurance Company owned by the plaintiff, on terms and conditions contained in an agreement executed on that date, a copy of which is also attached to the complaint. (This agreement recites that plaintiff is 72 years of age.) The complaint alleged that on March 2, 1946, the State Court proceeding previously instituted by the Attorney General was on his motion dismissed; that on October 16, 1947, the defendants caused to be terminated an employment contract entered into between the plaintiff and the Life Insurance Company, pursuant to the provisions of the contract of February 2, 1946, and that as a direct consequence and result of the wrongful acts of the defendants committed pursuant to such combination and conspiracy, plaintiff suffered direct pecuniary loss in the amount of $118,000.

Defendants in their motion for summary judgment recognize that they were charged in the complaint with obtaining plaintiff's property by conspiracy, compulsion and coercion, but as a defense assert that plaintiff subsequently entered into other contracts with defendant Robert E. Barrett and the Life Insurance Company, by which his cause of action is barred. The motion was supported by the affidavits of the defendants Kramer and Robert Barrett. Kramer's affidavit relates to the execution of the contract of August 18, 1944, and is presently without significance. The affidavit of Robert E. Barrett admits that an employment contract was entered into between the plaintiff and the Life Insurance Company, pursuant to the provisions of and on the same date as the contract dated February 2, 1946, that payments were made on said employment contract until October 1, 1947, and that on or about that date such contract was cancelled by the Life Insurance Company. The affidavit alleges that in January or February, 1948, plaintiff, through his attorney, Henry S. Blum, made a claim against the Life Insurance Company because of the wrongful cancellation of the employment contract, and that after negotiations between the Insurance Company and plaintiff's attorney, a contract was entered into on February 16, 1948, by which it was agreed that plaintiff should receive $15,000 additional in settlement of his claim. Also, on the same date, another contract was made between the plaintiff and his wife and the affiant (Robert E. Barrett), by which the plaintiff reaffirmed the terms of the contracts of August 18, 1944 and February 2, 1946. The affidavit further states that the plaintiff has been paid the amounts provided for in the two contracts of February 16, 1948.

Plaintiff in his motion to strike defendants' motion for summary judgment admits the execution of the 1948 agreements but alleges that he was "required to enter into said contract by threat of further action by said defendant (George F. Barrett) by means of and under color of the authority vested in him as Attorney General of the State of Illinois," and reiterates that he suffered a pecuniary loss in the amount of $118,000, after giving the defendants credit for all sums received by him in the premises. In support of his motion to dismiss, plaintiff submits his affidavit which in the main is a reiteration of facts relative to the conspiracy charge contained in his complaint. In addition, it is alleged that by the employment contract of February 2, 1946, plaintiff was to be employed by the Insurance Company at a salary of $750 per month for the first five years, and $350 per

month during the second five years; that notwithstanding this contract he was directed by the defendants Kramer and Robert Barrett to make no further appearance at the office of the Insurance Company; that he was notified on October 16, 1947, by these two defendants, that the employment contract was terminated; that plaintiff through counsel commenced negotiations in an attempt to make himself as nearly whole as possible, and that such negotiations resulted in the 1948 agreements.

Plaintiff in his affidavit also states: "That at all times referred to in this Affidavit, George F. Barrett was the Attorney General of the State of Illinois, including the time of the negotiations resulting in the execution of said contract of February 18 [16], 1948, that the terms of said contract were those Robert Barrett insisted that affiant accept, and that all of affiant's actions in connection therewith, as well as in connection with the prior agreements referred to in this Affidavit and in the complaint filed by affiant, were taken under the constant threat of action by, and concern on the part of affiant for the prosecution of proceedings by said George F. Barrett under color of his authority as Attorney General of the State of Illinois * * *."

Defendants from numerous angles attack plaintiff's affidavit as being insufficient to show an issue of fact relative to the existence of a conspiracy and the imposition of duress on February 16, 1948, when the agreements upon which defendants rely were executed. Much of the argument is predicated upon Rule 56(e), which provides that affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Whether plaintiff's affidavit standing alone is sufficient to raise a material issue of fact as to the 1948 contracts is open to doubt. However, we do not think this affidavit can be considered in a vacuum, as defendants would have us do, unrelated and unconnected with events which preceded the execution of the 1948 agreements. For our present purpose, we must assume and defendants must concede that they entered into a conspiracy to deprive plaintiff of his property by the imposition of duress in the manner and by the means alleged in the complaint. When was that conspiracy abandoned so that the duress under which plaintiff acted became non-existent? Certainly, according to the allegations of the complaint, the conspiracy was still in effect on October 16, 1947, because one of the overt acts alleged is that the defendants on that date cancelled his employment contract with the Life Insurance Company. And that date was only four months prior to the execution of the agreements upon which defendants rely to purge themselves of the undenied conspiracy.

Plaintiff in his affidavit concerning the 1948 agreement stated that the terms "were those Robert Barrett insisted that affiant accept, and that all of affiant's actions in connection therewith * * * were taken under the constant threat of action by, and concern on the part of affiant for the prosecution of proceedings by said George F. Barrett * * *." Perhaps the allegation as to what Robert Barrett "insisted" is a conclusion, but it can well be construed to mean that Robert Barrett "told" affiant to accept and, when so construed, we think it would be admissible in evidence. We also think the statement "were taken under the constant threat of action by, etc." would be a fact to which the plaintiff could testify, in view of the unchallenged allegations of the complaint.

Duress is characterized by the effect which it has upon the mind of the person upon whom it is imposed. Reiter v. Illinois National Casualty Co. et al., 328 Ill.App. 234, 261, 65 N.E.2d 830 (and cited cases). And like intent with which an act is committed, we suppose a court would allow considerable latitude in the examination of a witness claiming to have acted under duress. In Guardian Trust Co. v. Meyer, 8 Cir., 19 F.2d 186, at page 189, the court stated: "Whether such duress exists as to a particular transaction is a matter of fact." There, the suit was upon notes given by the defendant in lieu of other notes which had been obtained from him by duress. One of the issues in the case was whether the defendant by the execution of the renewal

notes had ratified the original. The court, in discussing this question, stated, 19 F.2d at page 193: "The same fear of prosecution that compelled the execution of the notes continued as a matter of course; the defendant in error so testifies, and reason supports his testimony. All his subsequent statements are readily attributable to this mental state."

In Harris v. Flack et al., 289 Ill. 222, 232, 124 N.E. 377, 381, the court stated: "While a deed obtained under duress may be ratified after the coercing influence has ceased to operate, it is evident, here, that such coercing influence did not cease to operate between the making of the trust deed and the so-called ratification." And on the same page, the court quotes with approval a rule from Story's Equity Jurisprudence, as follows: "'If the party is still acting under the presence of the original transaction or the original necessity, and of the delusive opinion that it is valid and binding upon him, then, under such circumstances, courts of equity will hold him not barred from relief by any such confirmation.'"

■ Thus, we think that the allegations of plaintiff's affidavit were sufficient to raise an issue of fact as to whether the conspiracy and duress theretofore shown remained in effect at the time of the execution of the 1948 agreements upon which defendants rely.

Defendants argue that there could have been no duress at the time the 1948 agreements were executed because at that time plaintiff owned no property. It is true, according to the complaint, that defendants prior to that time had acquired all of plaintiff's property by duress pursuant to a conspiracy. But if it was necessary, which we doubt, for plaintiff to own any property at the time the 1948 agreements were executed in order to make a factual issue as to whether the conspiracy and duress theretofore shown were still in existence, it is sufficient answer to observe that at that time plaintiff had a right of action against the defendants which, according to the allegations of the complaint, was of considerable value. More than that, it would be a strange and unthinkable doctrine that duress imposed as a result of a conspiracy to obtain the property of another would as a matter of law cease to be effective simultaneously with the transfer of the property. It still would be to the interest of the conspirators to protect themselves from their wrongful activities, which may have been the reason for the execution of the 1948 contracts. In any event, the question as to whether these latter contracts were obtained as a result of duress is one of fact and not of law.

■ Defendants further argue as a matter of law that there can be no duress relative to the 1948 agreements because plaintiff was represented by an attorney in their execution and in the negotiations leading thereto. After an examination of the cases cited by the defendants in support of this contention, as well as others, we think it is untenable. Such representation is not a bar to the raising of the issue of duress although it may be a circumstance highly relevant to its determination. The only Illinois case called to our attention or which our research discloses bearing upon this question is Reiter v. Illinois National Casualty Co. et al., 328 Ill.App. 234, 65 N.E.2d 830. The facts of that case are of sufficient similarity to make it pertinent to the point under discussion. There, the plaintiff was represented by an attorney in all the transactions relied upon. In directing a decree for the plaintiff, the court stated, 328 Ill. App. at page 263, 65 N.E.2d at page 844: "The fact that plaintiff parted with all his stock in the casualty company, constituting practically his entire estate, without receiving anything in return is sufficient proof that he and his attorney acted under influence and fear of threatened prosecution and liquidation of the company." This case was reversed by the Supreme Court on procedural grounds but not upon the merits. Reiter v. Illinois National Casualty Co. et al., 397 Ill. 141, 73 N.E.2d 412.

In view of what we have said, we think that there was a genuine issue as to a material fact, that is, whether plaintiff at the time of the execution of the 1948 agreements was acting under duress imposed by the defendants, and that defendants' motion for summary judgment was erroneously al-

lowed. The legal issues argued here as to the interpretation and effect to be given the 1948 agreements rest upon the premise that there was no issue of duress raised relative to their execution. The pertinency of these issues of law is, therefore, dependent upon a decision of the factual issue favorable to the defendants.

In concluding, we desire to emphasize that nothing we have said is intended or is to be construed as any expression of opinion as to the merits of the case. Our conclusion is and must be based upon the record as presented. Plaintiff has under oath made serious charges against the defendants and we think is entitled to the opportunity to prove if he can the charges thus made. On the other hand, the defendants equally are entitled to the opportunity to answer and meet such charges, and this they should welcome.

The judgment appealed from is reversed.