Josephine Martin, Plaintiff-Appellant, v. Po-Jo, Inc., a Corporation, Defendant-Appellee.

Gen. No. 68–117.

Second Judicial District.

January 30, 1969.

Rehearing denied March 12, 1969.

John R. Snively, of Rockford, for appellant.

Robert K. Clark, of Rockford, for appellee.

MR. JUSTICE SEIDENFELD delivered the opinion of of the court.

Plaintiff appeals from a final judgment order granting defendant's motion to dismiss its complaint for personal injuries based on negligence. The motion to dismiss was pursuant to the material portions of Ill Rev Stats 1967, c 110, § 48.[1]

[1] "Sec. 48. Involuntary dismissal based upon certain defects or defenses. (1) Defendant may, within the time for pleading, file a motion for dismissal of the action or for other appropriate relief upon any of the following grounds. If the grounds do not appear on the face of the pleading attacked the motion shall be supported by affidavit:

". . .

"(f) That the claim or demand set forth in the plaintiff's pleading has been released, satisfied of record, or discharged in bankruptcy.

". . .

"(3) If, upon the hearing of the motion, the opposite party presents affidavits or other proof denying the facts alleged or establishing facts obviating the grounds of defect, the court may hear and determine the same and may grant or deny the motion.

"If a material and genuine disputed question of fact is raised the court may decide the motion upon the affidavits and evidence offered by the parties, or may deny the motion without prejudice

The single issue raised is whether the pleadings disclose a material and genuine disputed question of fact.

The complaint alleges in substance that on January 8th, 1966, plaintiff entered defendant's store to purchase foodstuffs, and while there, due to defendant's negligence, she sustained injury to her person. A jury demand was filed. Defendant filed a motion to dismiss, alleging in substance that heretofore and prior to June 15th, 1966, the plaintiff was represented in the cause of action by a certain Rockford law firm; that on May 23rd, 1966, a member of said firm wrote to the defendant's representative and advised that he was authorized to settle the claim of the plaintiff for the sum of $1,000; that on or about May 27th, 1966, the defendant, through its representative, settled plaintiff's claim for that sum and submitted a release to the attorneys representing her; that on June 16th, 1966, defendant's representative received a letter from a member of the Rockford law firm returning the release executed and witnessed by the sender and another person; that the letter further requested payment of the sum of $1,000; that the defendant, on or about June 21st, 1966, forwarded a draft in the required sum and that said draft has been presented for payment and has been paid to plaintiff and her attorneys. A copy of the full release and a copy of the settlement draft endorsed by the plaintiff, together with the affidavit of Robert J. Lester, the representative referred to in the motion, were attached. The affidavit of Lester states in substance that he personally acted as a representative for the defendant and the American Hardware Mutual Insurance Company of Minneapolis, Minnesota, in the settlement of the plaintiff's claim; that of his own personal knowledge plain-

---

to the right to raise the subject matter of the motion by answer and shall so deny it if the action is one at law and a jury demand has been filed by the opposite party in apt time."

tiff retained the law firm of Pedderson, Menzimer, Conde & Stoner of Rockford to represent her interests in the matters in suit; that on May 23rd, 1966, he received a letter from attorney Harold Stern, of said firm, advising that said firm had been authorized to settle the claim of plaintiff for the sum of $1,000; that on or about May 27th, 1966, he personally settled the case with her attorneys and duly authorized agents for the sum of $1,000 and on or about said date submitted a release to attorney Stern for execution by the plaintiff; that on or about June 16th, 1966, he received a letter from attorney Pedderson, one of plaintiff's attorneys, returning the release witnessed by him and by one Harriet E. Heath and requesting payment of the $1,000; that pursuant to said request he did, on or about June 21st, 1966, deliver the Insurance Company draft to plaintiff's attorneys and states that said draft has been presented for payment and the sum of $1,000 has been paid to plaintiff and her attorneys; and further states that if he were called as a witness he can testify competently to all of the foregoing being based upon his personal knowledge.

Thereupon plaintiff, through the attorney on this appeal, who was also her attorney who filed the complaint on her behalf, filed a Motion to Strike the Motion to Dismiss as substantially insufficient in law. The court below denied the Motion to Strike and granted plaintiff leave to file counteraffidavits. Thereupon plaintiff filed her affidavit alleging that she is 72 years of age; that she was injured in an accident in the store of defendant on January 6, 1966; that while she was a patient in the Rockford Memorial Hospital, she was visited by one Robert J. Lester, a claim adjuster with wide experience, who talked with her relative to the accident; that she was discharged from the hospital on February 4th, 1966; that shortly thereafter the adjuster came to her home and presented a settlement draft for $500

which she refused; that at the suggestion of a neighbor she sought advice from C. A. Pedderson who came to her home, talked with her relative to the accident and her injuries, and that she told him she had a fractured hip; that Mr. Pedderson returned a second time accompanied by Harold Stern and talked with her again relative to the accident and her injuries and told her he would try to get her more money; that he wrote her on May 12th, 1966, that it looked as though the maximum that he would be able to get for her was $1,000, that he wrote her on May 24th, 1966, that he was not even sure that he could get that amount; that thereafter a purported release was submitted to her by Harold Stern which she believes was prepared by the adjuster, that he did not request her to read it, nor did he explain or read its contents, that she was ignorant of the same and of the consequences of the execution thereof, and that it appears that it was executed in the presence of certain persons whose names appear thereon, but they were not present; that she had not been discharged by her physician, and that her injuries were not stabilized and the full extent thereof could not be determined at that time; that there was a mutual mistake between her, the adjuster, the insurance company, and C. A. Pedderson, who purported to represent her, as to the nature and extent of her injuries, and that the parties, including the affiant, were not aware that her hip had been replaced with a "plastic hip"; that she was in necessitous circumstances; that she was induced to agree to accept a sum which was unconscionable in relation to the liability and gravity of her injuries, and that duress and coercion were used in the procurement of the purported release; that the consideration alone was grossly inadequate; that she did not receive any consideration for the purported release, nor did she receive the proceeds of any draft, that she has no recollection of signing any draft if any draft was in fact issued, and that she did not receive

any money; that the purported release was secured by mistake, misrepresentation or fraud, and that she hereby repudiates, rescinds and cancels the same. She states that if sworn as a witness she could testify competently to all the facts. There were no exhibits attached to the counteraffidavit.

Thereupon the trial court entered the judgment order dismissing the complaint, from which this appeal has been taken, and thereafter denied plaintiff's motion to vacate.

The principal direction of plaintiff's argument is that the court erred in dismissing the complaint on the pleadings in that it appeared from the counteraffidavit that the purported release was secured under a mutual mistake of fact: "That at the time she executed the purported release the parties were not aware that her hip had been replaced with a plastic hip," an allegation not refuted by the defendant. Defendant responds that the counteraffidavit shows that plaintiff knew she had a fractured hip and was under medical care for it; that she discussed the accident and injuries with her counsel; and that plaintiff has alleged conclusions rather than facts.

There are numerous cases in the State which have considered whether a release of a claim for personal injuries may be avoided on the ground that at the time it was executed the releasor was mistaken or misled as to the nature or extent of his injuries, or for fraud. ▮▮▮▮ Illinois follows the majority of jurisdictions in allowing a court to set aside a release executed by a tort victim when the facts indicate that the parties were mutually mistaken as to the extent of the releasor's injuries. The mistake must be mutual, and a unilateral or self-induced mistake of fact will be insufficient to void a release. The burden of proving that a release should be set aside rests with the party urging the invalidity of the document, and the evidence must be clear and convincing, inasmuch as the law favors com-

467

promise. Welsh v. Centa, 75 Ill App2d 305, 311–312, 221 NE2d 106 (1966). (Citing numerous cases.) See also 71 ALR2d 77, Annotated. A release may be avoided for fraud or fraudulent representations made by the releasee or his agent and relied upon by the releasor to his injury under the usual rules which apply to any other written instrument, but the release of personal injury should be carefully considered because mistakes are easily made and the consequences are more serious than in any other of the affairs of man. Brackeen v. Milner, 88 Ill App2d 50, 58, 59, 232 NE2d 241 (1967). In general, the modern trend of decisions is toward liberally relieving a party who has signed a release under a mistake as to the extent of his injuries, where the facts present an unconscionable result. This is due in large measure to the fact that the rescission or voidance of a release is often a form of equitable relief addressed to the chancellor in equity who is vested with that degree of discretion and flexibility necessary to the doing of justice under the circumstances of each individual case. Child v. Lincoln Enterprises, Inc., 51 Ill App2d 76, 81, 82, 200 NE2d 751 (1964).

While the majority of the cases have not been decided on pleadings, they may be so decided at that stage in a proper case. Civil Practice Act, § 48 (supra); Brackeen v. Milner (supra); Thomas v. Hollowell, 20 Ill App2d 288, 155 NE2d 827 (1959); Tidwell v. Smith, 27 Ill App2d 63, 169 NE2d 157 (1960); Welsh v. Centa (supra).

██ With reference to the motion to dismiss, it is clear that such motions admit facts well pleaded, but do not admit conclusions of law or conclusions of fact unsupported by allegations of specific facts upon which such conclusions rest. Triangle Sign Co. v. Randolph & State Property, Inc., 16 Ill App2d 21, 26, 27, 147 NE2d 451 (1957).

■ Considering the pleadings before us under the authorities, we find no error in the ruling of the trial court. The plaintiff's counteraffidavit shows on its face that the plaintiff knew that she had a fractured hip and was under medical care for that injury. We are not persuaded by her argument that the fact that she did not know that she had what she characterized as a "plastic hip" was the statement of a material and genuine disputed fact which would prevent the decision on the motion. This related to the manner in which her known injury, that is the fractured hip, was treated, and not to the extent of her injuries under the circumstances set forth. There is no claim of any new developments or change in her condition, nor any affidavit from her attending physician, or any other physician, that the method used was not the most effective treatment for one of her age or would cause her increased complications. There are no facts to support plaintiff's conclusion that the mistake was mutual with the insurance company and Mr. Pedderson, her attorney.

Similarly plaintiff's statements of fraud and overreaching are unsupported by facts and are conclusions. It appears from the pleadings that plaintiff sought counsel and discussed the accident with her counsel as well as her injuries. The negotiations and final settlement were concluded on her behalf by the attorneys of her choice and she had no direct dealings with the defendant after they entered into the case, so that the record is devoid of any fact which would substantiate or in any way indicate that plaintiff acted in response to any claimed conduct of fraud and overreaching on the part of the defendant. Her statement that she did not receive the $1,000 consideration cannot be considered a material statement of fact in view of the evidence in the record

that she signed the release, endorsed the draft and dealt through her attorneys with the defendant.

We, therefore, affirm.

Affirmed.

MORAN, P. J. and DAVIS, J., concur.