**SEARS, SUCSY & CO., a Delaware Corporation, Plaintiff,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, Defendant and Third-Party Plaintiff,**

v.

**Westcott TRAINOR et al., Third-Party Defendants.**

**No. 73 C 2833.**

United States District Court, N. D. Illinois, E. D.

Oct. 16, 1974.

Rehearing Denied March 26, 1975.

John J. Casey, Graham, Stevenson & Casey, Chicago, Ill., for plaintiff.

Edward D. Lapperre, Vincent P. Reilly, James L. Coghlan, Coghlan & Joyce, Terrence Hutton, Jenner & Block, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

MARSHALL, District Judge.

This is a motion for summary judgment by Ben B. Stein, third party defendant, against the Insurance Company of North America (INA), third-party plaintiff and original defendant, in an action filed by plaintiff, Sears, Sucsy & Co. (Sears).

Plaintiff Sears commenced this diversity action against INA alleging that INA had issued to Sears a Brokers Blanket Bond that provided coverage for losses through any dishonest or fraudulent conduct by the Sears' employees. Sears further alleged that as a result of various stock manipulations and conspiracy to commit the same by the three

third-party defendants, Ben B. Stein, Wescott Trainor and Annette Solomon, Sears was forced to rescind the sale of certain "Leisure Trend" securities to the public. As a result of the rescission offer, Sears claimed losses in excess of $50,000 which, it asserted, INA was obligated to pay (up to $35,000) under the policy of insurance.

INA answered admitting that a policy of insurance was in force and that a demand had been made under the policy by the plaintiff but denied liability because, as it alleged, the rescission was occasioned by the failure of the plaintiff to register the stock as required by the Illinois Blue Sky Law, Ill.Rev.Stat., ch. 121½, § 137.13 (1973), and therefore the loss was excluded from the policy under a provision exempting coverage for losses resulting from a statutory violation.[1] INA also denied any knowledge of the alleged Stein-Trainor-Solomon fraud.

INA also filed a third-party complaint, impleading Stein, Trainor and Solomon, alleging that if INA was liable to Sears, the three others were ultimately liable to INA as subrogee of Sears.

Stein answered the third-party complaint, denying all allegations of personal wrongdoing or any knowledge of any wrongdoing by Solomon and Trainor and raised four defenses: (1) that at all times his conduct was honest; (2) that the offer of rescission was made not because of any fraud, but because Sears had failed to register the securities as required by Ill.Rev.Stat., ch. 121½, § 137.4 (1971); (3) that on July 28, 1972, an agreement was reached ·between Sears and Stein releasing the latter from all liability for the rescission offer in exchange for a cash payment of $2,270.50; (4) and that as a consequence of an agreement dated July 13, 1972, between Gerald Sears and Lawrence Sucsy (officers and directors of the plaintiff) to share all net losses from the rescission, Stein as a third-party beneficiary of the agreement was entitled to be "protected from any liability and responsibility for the losses . . . and the plaintiff is estopped from claiming any damages" caused by Stein.

Stein then moved for summary judgment pursuant to Fed.R.Civ.P. 56(b), raising essentially three theories in support of his motion. First, he did not participate in or know of any fraudulent transactions in Leisure Trend stock; second, he was released absolutely from all liability for the Leisure Trend rescission; third, he is entitled to the benefits because of an accord and satisfaction.[2]

INA did not file a response to Stein's motion although one was filed by Sears with leave of court. Sears' response consists of an ambiguous affidavit by Edward Guarderas, an employee of the plaintiff, (the affidavit goes to the issue of fraud), a copy of a verified response to a motion for summary judgment that was filed in the Chancery Division of the Circuit Court of Cook County in a related action, an unverified memorandum that asserts various factual and legal conclusions, and several other exhibits that run to the issue of Stein's allegedly fraudulent stock manipulation. For reasons that are fully discussed later, these papers do not challenge the affidavits and papers filed by Stein, or raise a genuine issue of material fact on the affirmative defense of release.

The dispute in this lawsuit is difficult to understand unless certain events prior to the filing of the complaint are fully detailed.

Sears, a Delaware corporation with its principal place of business in Chicago, Illinois, is engaged in the business of buying and selling securities. Apparently the firm has had a number of difficulties with the Securities and Exchange Commission (SEC) and the National Association of Securities Dealers,

---

1. Brokers Blanket Bond, "Exclusions" § 1(h).

2. The second and third arguments apparently are based on the same agreement between Sears and Stein.

Inc. (NASD), stemming in part from certain alleged failures to comply with various regulations of the SEC promulgated pursuant to the securities acts. These difficulties led to the termination of five individuals, Lawrence G. Sucsy, Nathan Shapiro, Paul F. Fisher, Ben B. Stein and Sheldon R. Nissen, as officers, employees and stockholders of the plaintiff. Each of these individuals claimed certain assets of the firm. After a number of negotiations and meetings, which apparently began on May 18, 1972,[3] a separation agreement, dated June 8, 1972, was reached and signed by all parties on June 26, 1972. The closing, set for June 28, 1972, did not take place, however, because of the discovery of the alleged Leisure Trend fraud.

On June 28, 1972, Gerald Sears allegedly called Lawrence G. Sucsy and informed him that the June 8, 1972 agreement was off until certain just discovered problems with Leisure Trend stock were resolved. On July 13, 1972, an agreement of the same date was signed by Sears and Sucsy, which arranged for the apportionment of the Leisure Trend losses. Shapiro was also present at the meeting but refused to sign the agreement. The agreement required third-party defendants Stein, Trainor and Solomon to return all profits· made from trading in Leisure Trend stock in order to fund the rescission. Any additional funds necessary were to be provided by equal contribution from the plaintiff on one hand and Sucsy and Shapiro on the other. Whether Shapiro ever signed the agreement is unclear.

The crucial transaction relevant to the motion for summary judgment took place on July 28, 1972. On this date the contribution to the rescission fund (as provided in the July 13 agreement) was raised with the third-party defendants.

After much argument and discussion Stein agreed to pay into the fund $2,270.50 in exchange for a discharge of any and all liability and responsibility in connection with all trading in the Leisure Trend stock. Stein did make the payment which is evidenced by a copy of the check bearing a notation "as per agreement re: rescission of Leisure Trend stock." The check was subsequently cashed by the plaintiff. The other third-party defendants also made the requested payments. The agreement and payments are the alleged basis for Stein's claim of an accord and satisfaction and release.

■■ While not raised by the parties, the first issue presented is determination of the rule of decision. Under Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), a federal court sitting in a diversity action must apply the substantive law of the state in which it sits as well as that state's conflicts of laws. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The rule in Illinois is that the validity of a release is governed by the law of the jurisdiction under which the release is given and delivered. Woodbury v. U. S. Casualty Co., 284 Ill. 227, 120 N.E. 8 (1918); Frazier v. Sims Motor Transport Lines, 196 F.2d 914 (7th Cir. 1952).[4] Therefore, Illinois law would apply in the case. (Other questions on choice of law are not considered because they are not relevant for purposes of this memorandum.)

■ Rule 56(c) provides that a summary judgment should be granted if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. The first issue raised on Stein's motion is the nature of his conduct during the

---

3. The fraud which is the substance of this action allegedly took place between March 2, 1972, and through June, 1972. Complaint, para. 4.

4. A more recent case, Manos v. Trans World Airlines, 295 F.Supp. 1166 (N.D.Ill.1968), has applied the most significant contacts approach of the Second Restatement to a release. Under the older Illinois cases or the Second Restatement, the result would be the same since Illinois would be the state with the most significant contacts.

alleged time of the conspiracy. If Stein did nothing illegal during the time alleged, INA would obviously have no claim against him for indemnification as subrogee under the policy of insurance. Clearly then, the conduct of Stein is a material issue of fact. The next question is whether the issue can be resolved solely by resort to the pleadings, papers, and affidavits submitted by the movant and the other parties. The plaintiff's complaint, certain answers to interrogatories propounded to the plaintiff by Stein, the affidavit of Guarderas, and the plaintiff's certified answer to the motion for summary judgment filed in the Circuit Court of Cook County convinces this court that a material issue of fact does exist on the question of Stein's alleged fraud.

The second and third arguments raised by Stein in his memorandum accompanying his motion are based on an alleged release and accord and satisfaction, which was pleaded as his third defense in his third party answer. Apparently the agreement and release were oral because no documents have been submitted by Stein to establish the existence of a written release. The affidavits of Lawrence G. Sucsy[5] and Ben B. Stein[6] do, however, attest to an agreement whereby the third-party defendants would contribute certain monies to a rescission fund for the Leisure Trend stock and the plaintiff would in turn discharge the third-party defendants from any liability or responsibility in connection with and trading of the stock. Stein did make this payment ($2,270.50) to the fund on July 28, 1972.[7] Other reference to the agreement is found in an agreement, dated July 13, 1972, reached between the plaintiff and Lawrence Sucsy and Nathan Shapiro. The affidavits have not been contradicted on the issue of release by any party to the litigation.

Sears' unverified memorandum does make several allegations regarding the alleged release. In paragraph seven it states the agreement of July 13, 1972 was never intended to be a release of Stein. The release was reached on July 28, however, and Stein was not a party to the July 13, agreement. The July 13, agreement is only important in so far as it might constitute a third-party beneficiary contract and as it evidences the plan to finance a rescission fund. Sears does not contradict Stein's or Lawrence Sucsy's affidavit that the agreement of July 28, was intended as a release.

Sears also argues there could be no accord and satisfaction because the check does not represent its *total* loss suffered. This is a misconception of the law. Simply stated, an accord is an agreement or settlement of an existing dispute, controversy or demand which presupposes a disagreement as to what is due. Canton Union Oil Co. v. Parlin S. Orendorff, 117 Ill.App. 622, 624, aff'd, 215 Ill. 244, 74 N.E. 143 (1905). The payment and acceptance of an amount in full settlement of a larger amount that is unliquidated or in dispute constitutes a good accord and satisfaction of the whole claim or demand. Smyth v. Kaspar Amer. State Bank, 9 Ill.2d 27, 136 N.E.2d 796 (1936); Metro-Goldwyn Mayer, Inc. v. ABC Great States, Inc., 8 Ill.App.3d 836, 291 N.E.2d 200 (1972). Thus the payment by Stein need not have been equal to the total loss since the loss was disputed and unliquidated and liability was contested. Furthermore, the rule in Illinois is that the acceptance of a check given in full settlement of a disputed claim is an accord and satisfaction if the creditor took the check with notice of the condition upon which the check was tendered. See cases collected at 1 Ill. Law & Prac., Accord & Satisfaction § 27, at 182 n. 51.

In the present instance Sears does not dispute by complaint or affidavit that the check was given in satisfaction of all claims against Stein regarding Leisure Trend stock, nor does Sears dispute the

---

5. Para. 9.

6. Para. 9.

7. Third-party defendant's exhibit "F".

check was cashed. The only allegation by Sears concerning the check is that if the check is found to be an accord and satisfaction, this would bring into issue all the allegations in the verified answer to summary judgment filed in the State action and attached to the papers in this cause. A thorough reading of the papers, however, does not reveal any fraud in the July 28, agreement. The thrust of the State action appears to be the separation agreement of June 5, 1972.

■ In summary, there was a valid accord and satisfaction reached on July 28, 1972, and there is no material issue of fact raised about its execution. All the argumentative questions of fraud raised by plaintiff run to another agreement that is not the subject of this motion.

■ There remains the question whether the release, given with the accord, precludes the third-party action against Stein. None of the parties has undertaken to research the law of release in Illinois. A release is a contract, Bracken v. Milner, 88 Ill.App.2d 50, 232 N.E.2d 241 (1st Dist. 1967), and is governed by ordinary contract principles. Accordingly, it may be oral.[8]

■ Under Illinois decisions, if an insurer pays a loss suffered by the insured as a result of the actions of a third party, the insurer is subrogated to the insured's right of action against the party primarily at fault. National Cash Register Co. v. Unarco Indus., Inc., 490 F.2d 285 (7th Cir. 1974); Dworak v. Temple, 17 Ill.2d 181, 161 N.E.2d 258 (1951), aff'g 18 Ill.App.2d 225, 152 N.E.2d 197 (1st Dist. 1951). *See* 6A J. Appleman, Insurance Law & Practice, § 4051 (1962). As a consequence, "if an insured settles with one primarily responsible for the loss and releases him fully from all liability, such release destroys the insurer's right to subrogation and is a complete defense to an action on the policy." Tarzian v. West Bend Mutual Fire Ins. Co., 74 Ill.App.2d 314, 221 N.E.2d 293, 298 (1st Dist. 1966).[9] 6A J. Appleman, Insurance Law & Practice, § 4093 (1972), Annot. 92 A.L.R.2d 102 (1963). *Cf.* Bernardini v. Home & Auto. Ins., 64 Ill.App.2d 465, 212 N.E.2d 499 (1st Dist. 1965).[10]

8. There are no reported cases on oral releases in Illinois, nor is there any statutory prohibition against one. *See* Ill.Rev.Stat., ch. 59, §§ 1–18 (1973).

9. In *Tarzian* there apparently was an express subrogation clause. 221 N.E.2d at 298. In the policy at issue no subrogation clause has been pointed out by the parties.

10. Two decisions, Hardware Dealers Mutual Fire Ins. Co. v. Ross, 129 Ill.App.2d 217, 262 N.E.2d 618 (2d Dist. 1970), and Dinn Oil Co. v. Hanover Ins. Co., 87 Ill.App.2d 206, 230 N.E.2d 702 (5th Dist. 1967), have held that when an insurer denies liability, he may not rely on the defense of release as a defense to a plaintiff's suit on the policy. Upon first examination these decisions would appear applicable to the present case; closer examination reveals they are factually inapposite. In *Dinn* the release was executed after the denial, whereas in the present case the release was allegedly given on July 28, 1972, and a claim on the policy was not made until March 23, 1973. In *Ross* the release was given to the party primarily liable only after the insurer had denied the existence of a policy of insurance and therefore

any liability. After the release the insurer stipulated as to the existence of the policy but denied liability because of the release. The court reasoned (at 262 N.E.2d 622):

> It would appear that equity and good conscience should not permit an insurance company to deny that it had issued a policy of insurance and to maintain that position until after a situation arises which it thinks will give rise to a defense on the policy. It would further appear that the insurance company should not then be permitted to suddenly change its position, admit the existence of the policy and attempt to escape liability thereunder by raising as a defense an alleged breach of the policy, which occurred during the time that the policy was not in existence.

Both *Dinn* and *Ross* seemed to be based on the proposition that the insurance company cannot disclaim liability and/or the existence of a policy and then raise the defense of release after the insured settles with the wrongdoer at a time when coverage is denied. In the present case, the insured released the tortfeasor *before* a denial of coverage so no element of reliance on the denial can be claimed by the insured.

■ The general view of the cases is that when an insured settles with a tortfeasor and the settlement is intended to be a total release of the tortfeasor, the insurer may not maintain an action against the wrongdoer for indemnity or reimbursement because the insurer's rights arise by subrogation to the insured's rights. And since the insured has released the tortfeasor and therefore has no further rights against him, neither does the subrogee. Annot. 92 A.L.R.2d 102, 112 (1963).

In summary, Illinois' decisional law and the treatises agree that when the insured releases a wrongdoer, the release destroys the insurer's right of subrogation.

■ Stein was fully released by Sears by virtue of an accord and satisfaction supported by adequate consideration. Because of the release INA lost its right of subrogation against Stein.

Therefore, it is the judgment of the court that the motion of third-party defendant Ben B. Stein for summary judgment should be granted. Judgment will enter in favor of third-party defendant Ben B. Stein and against third-party plaintiff Insurance Company of North America on the third-party complaint of Insurance Company of North America.

The court finds, pursuant to Rule 54(b) Fed.R.Civ.P. that there is no just reason to delay the entry of this judgment, the enforcement or appeal therefrom.

### ON MOTION TO REHEAR

■ On October 16, 1974, third-party defendant Ben B. Stein's motion for summary judgment against the third-party plaintiff, Insurance Company of North America (hereinafter "INA") was granted and judgment was entered pursuant to Fed.R.Civ.P. 54(b). Twenty-eight days later on November 13, 1974, the plaintiff, Sears, Sucsy & Co., filed, pursuant to Fed.R.Civ.P. 60(b)(1), (6), the present "Motion to Rehear and Deny Ben B. Stein's Request for Summary Judgment." Two days later the plaintiff also filed a notice of appeal from the October 16 judgment. Although the plaintiff has filed a notice of appeal, this court has jurisdiction to consider the Rule 60(b) motion. Binks Manufacturing Co. v. Ransburg Electro-Coating Corp., 281 F.2d 252, 260–61 (7th Cir. 1960), cert. dismissed, 366 U.S. 211, 81 S.Ct. 1091, 6 L.Ed.2d 239 (1961). No motions were made under Rule 59(e) to alter or amend the judgment of October 16, 1974, and if the present motion is intended to fall within the ambit of Rule 59, the motion is untimely.

Plaintiff's Rule 60 motion set out three reasons why the motion for summary judgment should be reheard and denied: (1) counsel for the plaintiff mistakenly failed to submit the affidavit of Gerald A. Sears as an exhibit to plaintiff's answer to Ben B. Stein's motion for summary judgment; (2) the court mistakenly or inadvertently failed to consider the evidence of duress upon Gerald A. Sears at the time of the alleged agreements; (3) the court's opinion and order on the motion for summary judgment went beyond the issues presented in the pleadings on that motion. Before discussing these issues the salient facts surrounding the litigation, including the granting of Stein's motion, must be described.

The plaintiff was afforded every opportunity to file papers in opposition to Stein's motion. The motion for summary judgment was filed on April 16, 1974. And although the motion was addressed to INA, the plaintiff was given, on June 11, 1974, 30 days to respond, since a favorable judgment to Stein might have serious collateral effects on the plaintiff's case. Despite this opportunity, the plaintiff did not file an answer. On September 13, 1974, the day before Stein's motion was set for ruling, the plaintiff requested an additional 10 days to file an answer, which was granted. On September 24, 1974, plaintiff filed the answer.

After considering all the papers submitted by Stein and the plaintiff, the

motion was granted on the theory that by an agreement of July 28, 1972, the plaintiff had released Stein from any and all responsibility in connection with all trading in Leisure Trend stock. As a result, INA had no cause of action against Stein for indemnity or reimbursement. Whether INA could raise the defense of release against Sears in the primary action was purposely left undecided.

The plaintiff's motion under Rule 60, simply stated, alleges that the July 28 agreement is voidable because of duress exerted by Stein.

Rule 60(b) provides:

> Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Two of the objectives behind Rule 60 are both competing and conflicting. On one hand the rule buttresses the finality of judgments, while on the other it provides a number of grounds for relief from final judgments. J. Moore, Federal Practice, ¶ 60.27[1], at 340 (2d ed. 1974). In the present case the plaintiff argues that relief should be granted either under subsection (b)(1) or (b)(6).

The Court of Appeals for the Seventh Circuit has considered the scope of Rule 60 on a number of occasions. In Di Vito v. Fidelity & Deposit Co., 361 F.2d 936 (7th Cir. 1966), the defendant appealed from an order denying relief under Rule 60(b)(3)—fraud by an adverse party. In affirming the district court's order, the court of appeals stated:

> Rule 60(b) provides for extraordinary relief and may be invoked only upon a showing of exceptional circumstances . . . . A motion thereunder to vacate a judgment is addressed to the sound discretion of the trial court, and its determination will not be disturbed except for abuse of discretion. 361 F.2d at 938 (citations omitted).[1]

The court concluded that the defendant's conclusory affidavits fell far short of the clear and convincing evidence of fraud needed to invoke Rule 60(b)(3).

In a more recent case, Brennan v. Midwestern United Life Insurance Co., 450 F.2d 999 (7th Cir. 1971), cert. denied, 405 U.S. 921, 92 S.Ct. 957, 30 L.Ed.2d 792 (1972), the court further explained the philosophy behind Rule 60(b).

> While Rule 60(b) is not a substitute for appeal and the finality of judgments ought not to be disturbed except on very narrow grounds, a liberal construction should be given the rule to the end that judgments which are void or are vehicles of injustice not be left standing. Klapprott v. United States, 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed.2d 266, judgment modified, 336 U.S. 942, 69 S.Ct. 384, 93 L.Ed. 1099 (1949). 450 F.2d at 1003.

Applying this philosophy, the court affirmed the district court's denial of

---

1 *Accord*, Flett v. W. A. Alexander & Co., 302 F.2d 321, 324 (7th Cir.), cert. denied, 371 U.S. 841, 83 S.Ct. 71, 9 L.Ed.2d 77 (1962); Hulson v. Atchison, T. & S. F. Ry. Co., 289 F.2d 726, 730 (7th Cir.), cert. denied, 368 U.S. 835, 82 S.Ct. 61, 7 L.Ed.2d 36 (1961).

relief under Rule 60(b)(6). The case presented a somewhat novel question; whether absent and identifiable members of a class who received notice of the suit and neither elected to be excluded nor entered an appearance could be required to submit to discovery. The district court ruled they could and each absent member was so notified. Those who failed to comply with the discovery orders were dismissed from the lawsuit. Two and one-half years later the dismissed class members moved under Rule 60(b)(6) to have the order dismissing their claims set aside. The motion was denied.

The court of appeals held that the district court's discovery order was proper, and that denial of Rule 60 relief was appropriate even though the case was still in progress (before a master to determine claims), no extraordinary hardship would result to the defendants if relief was granted, the discovery orders were unusual and were communicated by mail to individuals who were not represented by attorneys, and the result of the order was to extinguish the movants' claims on a party whose liability had already been established.

As previously stated, the plaintiff suggests three reasons why the order of October 16, 1974, should be vacated and the motion for summary judgment denied. After a careful review of the record and the materials and the arguments submitted by the plaintiff, the motion pursuant to Rule 60(b) is denied.

■ The plaintiff asserts that the court's opinion and order of October 16 went beyond the issues presented in the motion and pleadings. Whether this means the defense of release should not have been considered or whether the plaintiff assumes the liability of INA to Sears was decided is unclear. For at least four reasons the defense of release was before the court. First, Stein and Trainor each pleaded the affirmative defense of release and accord and satisfaction. Second, Stein's memorandum in support of his motion for summary judgment raised the defense of accord and satisfaction and release. On page seven Stein argued:

As the preceding argument pertains to the issues of liability, the following pertains to the affirmative defenses interposed by Ben B. Stein in his answer to the third-party complaint. It is fundamental that, where a third-party defendant (the person ultimately liable) has been released by act of the plaintiff (the indemnitee) such act coextensively discharges the defendant-third-party plaintiff (the indemnitor) because he has been deprived of recourse by way of liability over. See cases at 42 CJS Indemnity § 41, n. 17–21; and at 41 Am.Jur.2d Indemnity, § 37, n. 19.[2]

Third, and most importantly, counsel for the plaintiff was aware of the scope of the motion. When he appeared before the court on September 13, 1974, to request an additional 10 days to file an answer to Stein's motion, the following colloquy occurred:

THE CLERK: 73 C 2833, Sears Sucsy and Company versus Insurance Company of North America, et al., motion to extend time to answer motion for summary judgment.

MR. CASEY: My name is John J. Casey representing Sears Sucsy. This matter was set for decision today on the motion for summary judgment.

THE COURT: That is correct.

MR. CASEY: I have failed to file an answer. I beg the Court's indulgence to permit ten additional days in which to file an answer.

THE COURT: Why are you answering it, Mr. Casey? It's not directed to you.

---

2. Ben B. Stein's "Memorandum In Support of Motion for Summary Judgment by Third-Party Defendant Ben B. Stein," filed April 16, 1974. Other references to the release are found in the affidavits of Lawrence G. Sucsy and Ben B. Stein, filed April 16, 1974.

MR. CASEY: Your Honor, if the order for summary judgment is entered in this matter, it will dispose of my claim against INA—well, it will dispose of my claim against INA. That is why INA is not answering.

THE COURT: Stein is the only one that's made the motion, right?

MR. CASEY: Correct.

THE COURT: If I were to sustain Stein's position, Trainor and Solomon haven't moved. Is that res judicata as to you?

MR. CASEY: I think it will be, your Honor.

THE COURT: All right. What do you want, ten days?

MR. CASEY: Ten days.[3]

And lastly, when the plaintiff finally did file his answer it contained several arguments relating to the validity of the alleged release. For these four reasons the plaintiff cannot be heard to claim that he was surprised by the scope of the October 16 order.

On the other hand, if plaintiff suggests that the court adjudicated the liability of INA to Sears, he is similarly mistaken. Stein pleaded and argued release against the claim being asserted by INA. Of necessity this involved general questions of an insurer's liability to the insured. The court did not, however, adjudicate, on the facts presented, the effect of the release on INA's liability to the plaintiff. The only question decided was Stein's liability to INA. Thus, without even determining whether plaintiff's argument could serve as basis for relief under Rule 60(b), the argument itself is clearly unsupported and without merit.

■ The plaintiff next asserts that Rule 60 relief should be granted because the court mistakenly or inadvertently failed to consider the evidence of duress on Gerald A. Sears when the agreements were allegedly executed. In substance, plaintiff alleges that the court committed an error of law in concluding that there was no material issue of fact regarding the execution and validity of the release. Before considering what evidence was considered by the court, a preliminary inquiry is whether judicial error of the type suggested can be corrected under Rule 60(b).

In Swam v. United States, 327 F.2d 431 (7th Cir.), cert. denied, 379 U.S. 852, 85 S.Ct. 98, 13 L.Ed.2d 55 (1964), the court held that Rule 60(b) was not intended as an alternative to appellate review or as a means of enlarging by indirection the time for appeal.

> If plaintiff believed the district court was mistaken as a matter of law in dismissing the original complaint, he should have appealed within sixty days after the dismissal or he might have filed a timely motion under rule 59 to vacate the judgment of dismissal and for leave to amend his complaint. He did neither. 327 F.2d at 433.

The court concluded that the failure to appeal or seek leave to amend were not cognizable as "mistake or inadvertence" under Rule 60(b)(1). See Wagner v. United States, 316 F.2d 871, 872 (2d Cir. 1963). Note, "Federal Rule 60(b): Finality of Civil Judgments v. Self-Correction by District Court of Judicial Error of Law," 43 N.D.Law. 98 (1967).[4] Thus, even if the court did err, since the plaintiff did not file a motion under Rule 59(e), he may only have review of this question by appeal.[5]

The plaintiff's last contention is that his counsel mistakenly failed to submit the affidavit of Gerald A. Sears as an exhibit to the plaintiff's answer to

---

3. Transcript of Proceedings before Judge Marshall, September 13, 1974, at 10:00 a. m.

4. Professor Moore believes judicial error is correctable under Rule 60(b)(1) if the motion is filed within the time for appeal. 7 J. Moore, Federal Practice, ¶ 60.22[3], at 258 (2d ed. 1974). *Swam* rejects this position.

5. From the record no reason appears why the plaintiff could not or did not file a motion under Rule 59(e) to alter or amend the judgment. *Compare* Flett v. W. A. Alexander & Co., 302 F.2d 321, 323 (7th Cir.) cert. denied, 371 U.S. 841, 83 S.Ct. 71, 9 L.Ed.2d 77 (1962).

Stein's motion for summary judgment. In essence, the plaintiff urges that Stein's motion for summary judgment should be denied because the Sears' affidavit raises material issues of fact, specifically that the July 28 agreement was executed under duress and was not intended as a release. The court is urged to consider the affidavit either because it was omitted by 60(b)·(1) "mistake, inadvertence, surprise, or excusable neglect . . . ," or the affidavit establishes under 60(b)(6) "any other reason justifying relief from the operation of the judgment."

The first question is whether the affidavit of Sears raises the issue of duress. Clearly, if the affidavit does not raise a material issue of fact there is no reason to open the October 16 judgment. On the other hand, if the affidavit raises a material issue of fact, the question becomes whether relief can be granted under (b)(1) or (b)(6).

The October 16 memorandum opinion and order did, contrary to the plaintiff's earlier allegation, consider the validity of the release. Paragraph seven of the plaintiff's answer to Stein's motion contained the only reference to the release and the question of duress.

> SEVEN: That the agreement of July 13, 1972, was never intended as a release and does not have language that would cause BEN B. STEIN to be released from his obligations as a party responsible for this stock manipulation. In order to be a release, a document must distinctly show on its face that there was an intent to discharge a creditor of his entire obligation and no such intent is evidenced on the face of the document of July 13, 1972. (Independent Order of Mutual Aid v. Peiffer, 129 Ill.App. 208 (1906).

In addition, there is presently pending in the Circuit Court of Cook County, Illinois, certain litigation captioned Sears, Sucsy & Co., a Delaware Corporation—vs—Nathan Shapiro, et al., 73 CH 3540 wherein this Agreement is one of the issues in dispute. If the letter of July 13, 1972 is in fact construed to be a release or if in fact the acceptance of a check of BEN B. STEIN by SEARS, SUCSY & CO. is in fact construed to be an Accord and Satisfaction then there is brought in issue all of the threats concerning going to the Securities and Exchange Commission on the alleged COMDESCO net capital violation which are referred to in the Answer to Motion for Summary Judgment and therefore the release or Accord and Satisfaction was induced by fraud or diress [sic] and therefore voidable.[6]

The reference to the state action and the attached verified answer to a motion for summary judgment in that action, also cast little light on the July 28 agreement. At most, the state answer puts in question the validity of the June 8, 1972, separation agreement between Sears, Sucsy & Co., and Lawrence G. Sucsy, Nathan Shapiro, Paul F. Fisher, Ben B. Stein, and Sheldon R. Nissen. The affidavits submitted by Pigott, Sucsy, and Stein reveal that the July 13 agreement to apportion the loss on the Leisure Trend stock (discovered after the June 8, 1972 agreement was signed) was entered because Gerald Sears threatened not to go ahead with the closing of the June 8 agreement. Stein was not a party to the July 13 agreement. The aforementioned affidavits also reveal that Stein entered into the July 28 agreement after an initial refusal and much argument. There was no evidence indicating fraud or duress in the July 28 release. In fact, the affidavits submitted on behalf of Stein reveal that he may have been coerced into agreeing to the rescission fund contribution. Moreover, Stein was not represented by counsel while the plaintiff was.[7] Lastly, in

---

6. Motion to Deny Ben B. Stein's Request for Summary Judgment, filed September 24, 1974, at 4.

7. This fact is not dispositive on the issue of duress but is a highly relevant circumstance to consider. Holzman v. Barrett, 192 F.2d 113, 118 (7th Cir. 1951).

the state court litigation plaintiff is trying to enforce the July 13 agreement, and has never attacked the July 28 agreement on the basis of duress.[8] Based on this evidence, the October 16 memorandum and order concluded no genuine issue of material fact existed.

Twenty-eight days after the plaintiff suffered the adverse ruling on Stein's motion for summary judgment, it filed the present 60(b) motion along with an affidavit by Gerald A. Sears. The relevant portions of the affidavit are as follows:

> TWO: In early 1972, Third Party Defendant BEN B. STEIN, in conjunction with LAWRENCE G. SUCSY, NATHAN SHAPIRO and SHELDON R. NISSEN, threatened GERALD A. SEARS, that unless he enter into certain agreements, including an agreement dated July 13, 1972, they would go to the Securities and Exchange Commission and report to it a certain possible net capital violation that occurred when the firm handled the underwriting of a stock known as COMDESCO.
>
> The only reason the agreement of July 13, 1972 was executed and the only reason that GERALD A. SEARS accepted the funds pursuant to this agreement was that unless he did so the Third Party Defendants, BEN B. STEIN, LAWRENCE G. SUCSY, NATHAN SHAPIRO, and SHELDON R. NISSEN, threatened to go to the Securities and Exchange Commission about an alleged net capital violation that occurred when the firm was handling the underwriting of a stock known as COMDESCO. GERALD A. SEARS told LAWRENCE COLES, the firm's Attorney and RICHARD ERICKSON, an employee, to do what was necessary to consummate the Agreement of July 13, 1972. This was said because of these threats and caused GERALD A. SEARS to accept

the payments even though they were for less that [sic] the actual loss which was incurred.

> \* \* \* \* \* \*
>
> FOUR: That at no time did GERALD A. SEARS give a written or oral release to BEN B. STEIN, LAWRENCE G. SUCSY, NATHAN SHAPIRO, or ANNETTE SOLOMON.

Had this affidavit been timely filed, it is doubtful that it would have avoided the summary judgment granted Stein against INA. It is ambiguous at best, speaking in an obfuscatory manner to the July 13 agreement rather than coming to grips directly with the July 28 transaction. But assuming, without finding, that the belated Sears' affidavit would have raised a material issue of fact had it been timely presented, the question is whether it should now be entertained to grant relief under Rule 60(b)(1) and (6). The explanation for the failure to submit promptly the affidavit is stated in the one paragraph affidavit of the plaintiff's counsel:

> One: That because of the broad nature of the allegations made in the motion for Summary Judgment filed herein by Ben B. Stein and because of a belief that the Court would take into consideration the fraud and duress exercised on Gerald A. Sears by Third Party Defendant, Ben B. Stein and Lawrence G. Sucsy, Nathan Shapiro and Sheldon R. Nissen, affiant failed to cause the affidavit of Gerald A. Sears to be affixed to the motion to deny Ben B. Stein's Request for Summary Judgment.

██ Rule 60(b)(1) states that the court may relieve a party from a final judgment for reasons of mistake, inadvertence, surprise, or excusable neglect. And while the rule is remedial and should be liberally applied, that does not mean it should be applied when the rule by its very terms precludes application.

---

8. This is not to imply the plaintiff could not assert inconsistent positions. These references are made only to highlight the absence of any allegations of duress relating to the July 13 or July 28 agreements.

7 J. Moore, Federal Practice ¶ 60.22[2], at 247 and n. 3 (2d ed. 1974).

In Dormeyer Co. v. M. J. Sales & Distributing Co., 461 F.2d 40 (7th Cir. 1972), the court reversed a denial of 60(b) relief against a defendant who suffered a substantial default judgment because New York counsel mistakenly failed to file and answer with the court, instead following New York practice of sending the answer to the plaintiff. Citing the attorney's long practice in New York, the policy against default judgments, and that he had moved quickly to correct the error while asserting a meritorious defense, the court concluded under all the circumstances that the failure was due to mistake or excusable neglect. 461 F.2d at 43.

■■■■■ The affidavit submitted by plaintiff's counsel does not raise the equities that existed in *Dormeyer*. Initially, the affidavit does not establish a mistake. Counsel's first statement that he did not include the affidavit because of the broad nature of the allegations in the motion belies his second reason—that the affidavit was omitted because he thought the court would consider the evidence of fraud and duress. "When a party seeks to invoke Rule 60(b)(1) he must show he was justified in failing to avoid the mistake or inadvertence." C. Wright & A. Miller, Federal Practice and Procedure § 2858, at 170 (1973). *See* United States v. $3,216.59 in United States Currency, 41 F.R.D. 433, 435 (D.S.C.1967). This circuit has declared that neither ignorance nor carelessness on the part of a litigant or an attorney will provide grounds for Rule 60(b) relief. Bershad v. McDonough, 469 F.2d 1333, 1337 (7th Cir. 1972). See also Hoffman v. Celebrezze, 405 F.2d 833, 835 (8th Cir. 1969) ; Farmer's Co-Operative Elevator Association Non-Stock v. Strand, 382 F.2d 224, 232 (8th Cir.), cert. denied, 389 U.S. 1014, 88 S.Ct. 589, 19 L.Ed.2d 659 (1967), reh. denied, 390 U.S. 913, 88 S.Ct. 815, 19 L.Ed.2d 887 (1968). Lastly, it is not a ground for relief that a party failed to present to the court on a motion for summary judgment all the facts known to him and that might have been useful to the court. Wright & Miller, *supra*, § 2858 at 173. *See, e. g.*, Smith v. Stone, 308 F.2d 15 (9th Cir. 1962).

■■■■ On the basis of counsel's affidavit only one conclusion is reasonable. His failure to file the Sears' affidavit was due to carelessness and negligence and no excuse justifying the error is present. Surely he had enough time to prepare the affidavit; the court allowed him from June 11, 1974, through September 23, 1974. Moreover, there is no allegation that the alleged duress on Sears was unknown to him, assuming that would be grounds for relief under 60(b)(1). *But see* Kahle v. Amtorg Trading Corp., 13 F.R.D. 107 (D.N.J. 1952). Therefore, the motion to rehear and deny under Rule 60(b)(1) is denied.

■■■■■ The remaining question is whether relief can be granted under Rule 60(b)(6). Relief under Rule 60(b)(6) is available when some reason other than those contained in 60(b)(1)–(5) is asserted, and that reason justifies relief. Klapprott v. United States, 335 U.S. 601, 614–15, 69 S.Ct. 384, 93 L.Ed. 266 (1949). Thus, 60(b)(1) and 60(b)(6) are mutually exclusive, and since the conduct of the plaintiff's attorney was no more than carelessness it falls under clause (1). No relief under clause (6) is therefore available. Bershad v. McDonough, 469 F.2d 1333, 1336 and n. 3 (7th Cir. 1972). Even assuming the conduct falls under clause (6) and not (1) relief would still be unavailable because (6) is applicable only upon a showing of extraordinary circumstances. *Compare* Klapprott v. United States, 335 U.S. 601, 69 S.Ct. 384, 93 L. Ed. 266 (1949), *with* Ackermann v. United States, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950). Counsel's affidavit clearly does not establish any extraordinary circumstances.

■■■■ Rule 60 is designed to relieve parties from final judgments when justice so requires, but in considering the requirements of justice due and weighty

regard must be given to the finality of judgments. This was not a case in which a party was the victim of a default judgment to which he had a meritorious defense. This was a motion for summary judgment in which all the facts and law were thoroughly considered. On the facts originally presented summary judgment was granted for Stein. Only after an adverse judgment did the plaintiff seek to bolster its original position. At some point, however, all the parties are entitled to say enough —the question has been decided. The plaintiff had ample opportunity to present its evidence and failed to do so.

As a final matter, plaintiff has suggested various other defenses it has on the merits of the litigation. These are clearly beyond the scope of a Rule 60(b) motion. *See* Bigelow v. RKO Radio Pictures, Inc., 16 F.R.D. 15, 18 (N. D.Ill.1954).

Therefore, it is ordered that plaintiff's motion to rehear and deny Ben B. Stein's motion for summary judgment is denied.